### William Ewald v. Michigan Central R. R. Co.

1. MASTER AND SERVANT—*Servant Assumes the Ordinary Risks of the Employment.*—A lineman engaged in climbing telegraph poles assumes the risk incident to the decayed and unsound condition of the poles.

2. EVIDENCE—*Permission to Exhibit Injured Members to the Jury is Within the Discretion of the Court.*—Whether the plaintiff may exhibit his injuries to the jury lies within the discretion of the trial court.

Trespass on the Case, for personal injuries. Error to the Circuit Court of Cook County; the Hon. CHARLES A. BISHOP, Judge presiding. Heard in this court at the October term, 1902. Affirmed. Opinion filed March 19, 1903.

CRATTY BROTHERS, JARVIS & LATIMER, attorneys for plaintiff in error.

WINSTON, BABCOCK, STRAWN & SHAW, attorneys for defendant in error.

MR. PRESIDING JUSTICE BALL delivered the opinion of the court.

The plaintiff brought an action against the defendant to

recover damages on account of personal injuries received February 26, 1896.   Upon the trial, and at the close of the evidence for the plaintiff, the court directed a verdict for the defendant.   From the judgment entered thereon this writ of error was prosecuted.

The plaintiff had been in the employ of the defendant for about nineteen years prior to the accident.   The defendant had condemned its telegraph line from Detroit to Chicago, and was engaged in putting up a new line between those cities.   The manner of doing this work was as follows:   A new pole was set up opposite to and about six feet from each old pole.   Thereupon one man would ascend the old pole and another the new pole.   They would then transfer the wires.   When they came down the old pole was removed. The labor of fastening the wires was greater than was that of releasing them.   For that reason these two men, called linemen, alternated in their work.   In the meantime the other laborers, designated as ground men, were engaged in digging a hole for and in planting the next new pole.   This work was performed by a crew under charge of a foreman. The men frequently changed work.   Those who climbed the poles one day were employed the next day as ground men.   In this way each man became thoroughly acquainted with every detail of the work.   The plaintiff had been a member of this crew for more than two years prior to his injury.   He knew that the old line had been in use for from fifteen to eighteen years, that many of the poles were rotten and unsafe, and that they had all been condemned and were being taken down by his crew.   He also knew that " no inspection was ever made of these poles when we were rebuilding the line."

The men engaged in setting the new poles had pike poles which they used in raising the new poles into position.   As the wires could not be transferred until the new poles were in place, the ground men were generally a little in advance of the linemen.   When the latter came to a pole that was so badly decayed as to be liable to fall upon the removal of the wires, it was stayed by placing pike poles against it, or

it was steadied by the use of rails, poles or other timber found in the vicinity of the work. The plaintiff says, " If the pole was rotten or shaky we would brace it."

Upon the day of the accident, near Grass Lake in the State of Michigan, the plaintiff and his fellow-lineman came to an old pole. The plaintiff made no special examination of the pole, but just " looked at it the same as any other linemen do at a pole that they climb." It looked good and sound for an old pole. He did not notice any rottenness or decay about the bottom of it. The fact was that it was rotted off, or nearly so, beneath the surface of the ground. The plaintiff did not call for the pike poles, which were in the possession of the ground men who were working 150 to 175 feet west from where he stood; nor did he brace this pole in any way; but believing it to be safe, he climbed it. After he had removed the wires he leaned over to get the insulators, when the pole broke off about eighteen inches below the surface of the ground and fell, throwing him down upon the railway tracks. The injuries for which he sues were thus occasioned.

The plaintiff was an experienced lineman. He was familiar with the risks of his employment. One of these risks, probably the most obvious, in reference to which it must be presumed he contracted when he entered upon this work, was that one of these old poles might break and fall while he was working upon it. He knew that after the wires were removed the pole would fall unless kept upright by its own strength and soundness. That the employe assumes all the usual and known dangers of his employment is familiar law. Herdman-Harrison Milling Co. v. Spehr, 145 Ill. 333. The plaintiff had not been told to go up these old poles without having them braced or steadied. The only direction he received from the foreman was to do his work. He came to this pole, glanced at it, and without further examination, and of his own volition, climbed it. He had as much knowledge of the condition of this pole, and a greater opportunity to ascertain whether or not it was rotten, than had any other man in the crew. He was

not sent to confront unknown dangers. The very defect that caused his injury was the chief reason why he and the other men composing his crew were engaged in putting up the new line and in taking down the old one. He knew all about the risks and hazards of his employment, as far as any man could know them. With that knowledge he chose to remain in the employ of the defendant. His occupation was necessarily dangerous, and it therefore called for corresponding care on his part for his personal safety. If his inspection of the pole convinced him that it was unsafe, the means were at hand to brace it. He did not ask that this be done, but relying upon a casual inspection and judging for himself, climbed it, and thus met with his misfortune.

In Sias v. The Consolidated Lighting Co., 73 Vt. 35, where a lineman was injured by the fall of a pole on which he was at work, the court reversed a judgment for the plaintiff on the ground that no negligence on the part of the defendant was shown. In the opinion it is said :

"It is impossible to say that it is the duty of the company to furnish the lineman a safe pole upon which to work. The nature of his employment involves the necessity of working upon poles in various stages of decay. He contracts with reference to this necessity, and must be held to assume the risks involved in it. The point of danger is a few inches below the surface, and the condition of the pole can be ascertained only by an examination at that point. The examination is not to determine whether the designated work shall proceed or not, but to determine in what manner it shall proceed. It is auxiliary to the lineman's principal work, can be conveniently made in connection with it, and requires no separate training. It is difficult to conceive of any preliminary work that would be more clearly in the line of the servant's duty. It could hardly be required that a company sending out a gang of men to repair its line should send other men before them to inspect the poles, and determine which could safely be climbed without the taking of precautions."

In Saxton v. N. W. Telephone Ex. Co., 81 Minn. 314, the plaintiff was a lineman in the construction and repair department of the defendant company, and at the time of

his injuries was engaged in taking down old and decayed telephone poles and replacing them with new ones. He was injured by the falling of a pole which he had climbed for the purpose of detaching and removing the wire thereon, preparatory to taking the pole down. The pole was rotten and defective at the bottom and broke, thereby precipitating plaintiff to the ground. Plaintiff was engaged in this work and understood that the poles were being taken down because they were defective and unsuitable for defendant's purposes. The court say :

" Plaintiff knew and well understood that the poles were being taken down because of their defective condition, and the burden to ascertain the nature of the defects and the dangers incident to the work was assumed by him." See also McIsaac v. N. E. L. Co., 172 Mass. 89, and Greene v. W. U. Tel. Co., 72 Fed. Rep. 250.

We have carefully examined the rulings of the court as to the rejection of evidence offered by plaintiff. The court refused to permit witnesses to show that there was a general way in use of testing poles to determine whether they were secure or whether they were rotten and decayed beneath the surface of the ground. This evidence, under the issue involved, was immaterial.

It is also objected that the court erred in excluding evidence as to what must have been the condition of this pole six months before the accident. It was already in proof that this line had been built eighteen or twenty years before the accident, and that the poles were all being removed because of their rotten or unsafe condition. This ruling of the court, if it was error, which we do not declare, was not prejudicial to the plaintiff.

It was further objected that the court refused to permit the plaintiff to show his injured legs to the jury. Whether or not such an exhibition shall be made, is within the discretion of the trial judge. Chicago & Alton Ry. Co. v. Clausen, 173 Ill. 100. The extent of the plaintiff's injuries was not controverted. Both he and his physician testified in that regard. No opposing evidence was introduced. Under these circumstances we think there was no abuse of

the discretion vested in the trial court in refusing the request.

We find no reversible error in this record either as to the admission or as to the rejection of evidence offered.

The facts of this case do not come within the rule that it is the duty of the master to furnish to the servant a reasonably safe place in which to work. It had its dangers, but they were fully known to the plaintiff, and it was therefore his duty to guard himself against personal injury from such known dangers.

The whole case being considered, we are of the opinion that the thing which caused his injury was one of the dangers he knowingly assumed when he entered upon and continued in this employment; that the defendant was guilty of no negligence which contributed to his injury; and that the learned trial judge committed no error in directing a verdict for the defendant.

The judgment of the Circuit Court will be affirmed.