Norman McKenzie *v.* Boutwell & Varnum.

October Term, 1906.

Present: Tyler, Munson, Watson, Haselton, Powers, and Miles, JJ.

Opinion filed December 6, 1906.

*Bailments—Negligence of Bailee—Violation of Terms of Bailment—Trover, and Case for Negligence—Evidence —Value—Remoteness of Time—Discretion of Court— Repair of Road After Accident—Motion for Verdict— Questions for Jury—Improper Argument—Effect of Full Retraction—Motion to Set Aside Verdict.*

In an action against the bailees of a horse for its death resulting from injuries caused by defendants' alleged negligence, where defendants' counsel in answer to an inquiry by the court said, "Whether there was any negligence afterwards in the care of the horse I don't know," it was proper, as bearing upon defendants' possible claim that the horse died from plaintiff's negligence, to allow him to testify that immediately after the accident one of

the defendants directed him to take the horse to the former's barn for treatment.

When asked the value of the horse, plaintiff twice improperly answered, "I value him at $300," but when asked the third time, he properly answered, "Well, between $275 and $300." *Held*, that, as the verdict was for a much smaller sum than any of the plaintiff's estimates, his two first answers could not have influenced the jury.

Plaintiff's witness having testified that, after having owned and used the horse for a year, he sold it to plaintiff, and had seen it occasionally thereafter on the highway, upon being asked to state the value of the horse, the witness was properly allowed to answer: "If he was as sound as I should say he was without having seen him for a year or so and examining him closely, I should say from $200 to $225." The remoteness of the times when the witness had last seen the horse only affected the weight of his testimony, and its admission or exclusion on that ground was discretionary with the court.

In an action of trover with counts in case for negligence, brought against the bailees of a horse for injuries resulting in its death, plaintiff's evidence tended to show that the horse was one of a pair of horses let by him to defendants to be worked together on a dump-cart in operating their quarry, and that while working separately on defendants' road leading to their dump, the horse was injured through an insufficiency of the road due to defendants' negligence. Defendants denied both said negligence and that the contract confined them to using the horses together. *Held* that, it appearing that defendants continued to work the surviving horse for a week after the other died, and that plaintiff claimed that this was not under the terms of the original bailment, but that "it was under a different arrangement, that the road was made passable, and that then the other horse remained there to work," it was. proper to allow plaintiff to show that after the accident defendants repaired the road leading to the dump, not as tending to show defendants' antecedent negligence, but only as bearing on the question why the surviving horse was allowed to remain and work singly.

The court properly refused to direct a verdict for defendants; because whether they had converted the horse, and if not, whether it was

injured through their negligence, were questions of fact for the jury under proper instruction.

Since, upon defendants excepting to certain improper statements made by plaintiff's counsel in argument to the jury, the matter was promptly and adequately dealt with by the court, and the statements fully retracted by the counsel, there is not sufficient cause for setting the verdict aside for improper argument.

TROVER AND CASE.   Plea, not guilty.   Trial by jury at the March Term, 1906, Washington County, *Rowell,* J., presiding.   Verdict for the plaintiff to recover $226 and costs, and judgment thereon.   The defendants excepted.   The opinion fully states the case.

*John W. Gordon* for the defendants.

Repairs after an accident cannot be shown for the purpose of proving antecedent negligence.   1 Jones on Evidence, §290; *Dale* v. *D. &c., Co.,* 73 N. Y. 468; *Creamer* v. *Burlington,* 45 Iowa 627; *Morse* v. *Minn. &c., Co.,* 30 Minn. 465; *Dougan* v. *Champlain Trans. Co.,* 56 N. Y. 1.

The remarks of plaintiff's counsel in argument vitiated the verdict in his favor.   Counsel knew that these remarks would create sympathy and prejudice.   *Magoon* v. *B. & M. R. R.,* 67 Vt. 177; *Blaisdell et al.* v. *Davis,* 72 Vt. 308; *Banchu* v. *Rutland R. Co.,* 71 Vt. 142; *State* v. *Hannett,* 54 Vt. 83; *Rea* v. *Harrington,* 58 Vt. 161; *Cutler et al.* v. *Skeels,* 69 Vt. 161; *Daggett* v. *Champlain Mfg. Co.,* 71 Vt. 370; *State* v. *Fitzgerald,* 68 Vt. 125.

*M. M. Gordon* for the plaintiff.

An exception does not lie to improper argument of counsel, where the objectionable statements are immediately

withdrawn and the matter is promptly dealt with by the court. *McMullin* v. *Erwin,* 69 Vt. 338; *State* v. *Young,* 74 Vt. 478; *Kilpatrick* v. *G. T. R.,* 74 Vt. 288; *State* v. *Suitor,* 78 Vt. 391.

TYLER, J.   The declaration contains a count in trover and two counts in case.   Under the first count the plaintiff claimed that he let a pair of horses to the defendants to work together upon a dump-cart in operating their quarry, and that in violation of the contract they worked them separately and put them to a different use than the contract contemplated and thereby converted them to their own use.   One of the horses was injured while working alone and died of his injuries. The jury found by a special verdict that the defendants were not guilty of trover, and therefore they must have failed to find the contract claimed by the plaintiff.   The verdict was that the defendants were *guilty of negligence under the counts in case.*

1.   The plaintiff was permitted to testify that directly after the accident he had a conversation with defendant Boutwell, who directed him to take the horse to his, Boutwell's, stable for treatment.   This evidence was objected to, and the plaintiff's counsel being inquired of by the presiding judge, said that it was offered to show that Boutwell appreciated the situation and considered the defendants liable for the injury— that they had not worked the horses together according to the agreement.   The offered evidence was incompetent to show negligence on the part of the defendants in the use of the horse (*Sias* v. *Consolidated Lighting Co.,* 73 Vt. 35), and it is difficult to see how it could have borne upon the issue whether the contract was as the plaintiff claimed, namely, that the horses were to be worked together and not separately.   But pending the question the presiding judge asked the defendants' counsel if they made any question but that the horse died

from the injuries received, and he replied "I do not want to concede—whether there was any negligence afterwards in the care of the horse I don't know. I suppose the first trouble with the horse was this accident" * * * The judge then directed the witness to answer the question and for the evident purpose of showing whether or not any negligence was imputable to the plaintiff in his treatment of the horse after the accident, or whether the horse died of his injuries. The statement made by the defendants' counsel before the question was answered, that he did not question but that the horse died of the injuries received, did not meet the court's inquiry. The answer was clearly admissible as bearing upon any claim that might be made that the horse died from the plaintiff's negligence. The exception taken cannot avail the defendants.

2. The plaintiff was asked by his counsel what was the fair value of the horse, and he improperly answered: "I valued him at $300." To the court's inquiry he made the same answer, but upon the question being put the third time he seemed to understand what was a proper answer, and said, "well, between $275 and $300." It is inconceivable that the plaintiff's first two answers could have harmed the defendants. That the jury were not influenced by them is shown by the fact that the verdict was for a much smaller sum than any estimate of the plaintiff.

3. The witness Smith testified that he owned and used the horses a year and sold them to the plaintiff. Upon being asked to state the value of the horse that died he answered: "If he was as sound as I should say he was without seeing him for a year or so and examining him closely, I should say from $200 to $225." He had previously stated that the plaintiff paid for the horses in part by working with them for him, and

that he occasionally met them upon the highway after the sale. There was no error in the admission of the evidence. The witness' estimate of value was predicated upon the horse remaining as sound as when he sold him. The remoteness of the times when the witness had last seen the horse only affected the weight of his testimony. Its admission or exclusion on that ground was discretionary with the court.

4. The plaintiff was permitted to show, under the defendants' exception, that after the accident the defendants repaired the road that led to the dump. The rule is that repairs of a highway by the selectmen of a town, after an accident, cannot be shown for the purpose of proving antecedent negligence. But here the evidence was offered not only to show that the defendants considered the roadway unsafe, but for the further purpose of showing, from the fact that the surviving horse remained there and worked a week after the other one died, that the contract was as the plaintiff claimed in respect to the horses being worked together.

The declaration was framed and the case was tried and submitted to the jury upon two grounds,—one, that by the defendants working the horse singly in violation of the contract, they converted him to their use,—the other, that he was injured through their negligence. The defendants denied both claims. Upon the first ground, if made out, the contract ended with the injury to one horse, and the other was worked thereafter under a new agreement. The plaintiff's offer was, "to show that it was under a different arrangement,—that the road was made passable, and that then the other horse remained there to work," and not under the original agreement. The court inquired of counsel if the evidence was offered to show that the road was soon repaired

and that that was the reason why the other horse remained there to work, and counsel replied that that was the purpose. It was admitted for that purpose only, and the court at the close of all the evidence instructed the jury that they were to consider it only as bearing upon the question why the horse was allowed to remain there and work singly for a week, and not as an admission by the defendants that the road needed repairing. With this restriction and instruction there was no error in admitting the evidence.

5. The court properly refused to direct a verdict for the defendants for the reason that whether there had been a conversion of the horse by the defendants, and if not, whether it was injured through their negligence, were questions of fact for the jury under proper instructions. The court carefully explained to the jury the two grounds upon which the action was brought, and when they rendered their verdict, inquired upon what ground they found the defendants liable, whether for negligence or under the count in trover, and the foreman replied, "negligence."

6. The plaintiff's counsel said in his argument that the defendants did not care what became of the horse; that what they wanted was to get all they could out of him; that they didn't care whether he went over the dump or not; that they had money enough to fight, etc. The remarks were improper, but upon exception being taken thereto by the defendants' counsel they were fully retracted and the matter was so promptly and adequately dealt with by the court that we think there is not sufficient cause for setting the verdict aside.

*Judgment affirmed.*