GRANITE STATE MUTUAL AID ASSOCIATION *v.*
CHARLES W. PORTER AND WILLIAM
H. Du BOIS.

*Foreign Co-operative Insurance Association. Insurance
Commissioners.* R. L. ss. 3607, 3611. *Acts of
1884, No. 45, Mandamus.*

Under the statute, R. L. s. 3607, amended by No. 45, Acts of 1884, a mutual or co-
operative insurance association, not organized under the laws of this State, is
not entitled to a license to transact business in Vermont, unless it has assets to
the amount of $100,000, and so much more as may be necessary to balance its
liabilities; such liabilities to be computed and assets invested as provided by
statute.

PETITION for *mandamus.* The petition set forth that the
petitioner was a corporation chartered by the legislature of
New Hampshire, where its home office was located; that it
organized for the purpose of doing business of life insurance
on the mutual and co-operative plan ; that December, 1884,
it had 2,571 contributing members and now a still greater
number; that the company has complied with the laws of
New Hampshire as to making annual returns; that it has
been and is of sufficient ability to pay and has paid its stated
benefits; that the insurance commissioners "have doubts as
to whether they are authorized by the statutes of this State
to grant and issue such license to said association, because
it is doing life insurance business on the assessment or co-
operative plan, and has not a paid-up capital of $100,000."

The defendants, the insurance commissioners of this State,
admitted all or nearly all of the allegations in the petition,
but closed their answer as follows: "Your petitionees are
of the opinion that they are not authorized by said statutes
to issue a license to said association, for the reason that it

is a co-operative insurance company and has not assets to the amount of $100,000.   And your petitionees believe that a proper construction of said statutes will debar said association from the right to a license to transact business in this State."

The prayer of the petition was that the commissioners be commanded to issue a license to the petitioner to do life insurance business in this State.   No. 45 of the Acts of 1884 amended the statute cited in the opinion of the court, by inserting or incorporating between the words " liability " and " nor until," the following words: " Or it be incorporated by act of the legislature of the State in which its home office is located, or it be located in some State requiring by law annual returns to be made under oath of the business of such company, association, or society, which law is complied with by such corporation, and it have not less than 2,000 contributing members, and is of sufficient ability to pay, and shall pay, by assessment, its stated benefits in full."

*C. B. & C. F. Eddy*, for the petitioner.

*Pitkin & Huse*, for the petitionees.

The opinion of the court was delivered by

ROYCE, Ch. J.   The only question presented in this case is the construction to be given to sec. 3607 R. L., as amended by No. 45 of the Acts of 1884.   Before amendment, that portion of sec. 3607 which is applicable, read as follows:   "A mutual insurance company or co-operative insurance company, association or society, not organized under the laws of this State, shall not transact the business of such company in this State unless it has assets amounting to $100,000, invested in securities readily convertible into cash, not less than one half of which is invested in cash securities other than mortgages of real estate, nor unless it has such assets equal to its outstanding liabilities, including re-insurance to be estimated as in the case of joint stock insurance companies above named, and including the amount of guarantee capi-

tal as a liability; nor until the laws of this State relating to insurance companies of other states have been complied with," etc. The clear import of this language is that in order to entitle it to a license to conduct business in this State, as provided in sec. 3611 R. L., the applicant company must show assets to the amount of at least $100,000, and so much more as may be necessary to balance its outstanding liabilities, such liabilities to be computed, and such assets to be invested, as is provided in the section.

It is well known that in mutual fire insurance companies, ordinarily, if not universally, the bulk of assets consists of premium notes, and as the amount of these is graded according to the amount of insurance in force, this language is obviously adapted to that class of companies; and as mutual life companies accumulate assets in proportion to the business transacted, it is equally applicable to them. Its requirement is simply that the company shall be of such standing and consequence that it can show at least $100,-000 of assets, and that the investment of its assets and proportion of resources and liabilities shall conform to the standard established by the law. With co-operative insurance companies the conditions are different. Beyond such paid-up capital or reserve fund as they may have, if any, the amount of their tangible assets is ordinarily inconsiderable, if not entirely absent. They are simply based on the mutual agreement of the members of the association to respond to assessments for the payment of losses in such manner as is provided by the rules of the company or association, and the failure to do this operates to cancel the insurance of the member so failing to perform his part of the mutual agreement. In the case of a co-operative company, then, supposing it to have a paid-up capital or reserve fund of $100,000, whenever its liabilities exceeded that amount, upon the basis prescribed by the law, it would ordinarily become impossible for it to comply with sec. 3607, so as to establish its right to a license; and the larger its member-

ship and correspondingly stronger its real condition, the wider the breach, because the larger the membership the larger would become its liabilities, with no corresponding increase in any *kind* of assets recognized by the law.

A consideration of this state of affairs strongly suggests that the amendment of 1884 was intended to remedy it, by providing for the recognition of this intangible class of assets, namely, paying membership. But to assume that the legislature intended to dispense with all requirement for any other kind of assets would involve the proposition that it intended to permit foreign insurance companies to do business in this State, under regulations which would subject the citizen who might insure in them to the risk of having his claim for a loss cut down, by whatever amount of deficit there might happen to be on account of the failure of members to respond to their assessments, without any convenient or certain remedy. Such a conclusion would be entirely at variance with the policy of the legislature, as shown by the various successive enactments upon this subject, all of which have plainly had in view the more complete protection of the rights of citizens insuring in non-resident companies; and so far from requiring it, the language and grammatical construction of the section, as amended, are clearly against it.

The provisions of the amendment are plainly alternative only with the clause immediately preceding, and do not refer back to that which requires assets amounting to $100,-000. The section, as amended, permits the granting of a license to a mutual or co-operative company having assets of at least $100,000, and which shows whatever amount in addition thereto may be necessary to balance its liabilities as ascertained in the manner prescribed, *or* a compliance with the conditions prescribed in the amendment.

The petition is dismissed, without costs.