HERBERT R. SIAS *v.* THE CONSOLIDATED LIGHTING COMPANY.

January Term, 1899.

Present: TAFT, C. J., ROWELL, MUNSON, START, THOMPSON and
WATSON, JJ.

Opinion filed January 28, 1901.

*Facts not tending to show the fellow-servant relation—Denial of request inapplicable to any evidence—*The plaintiff was employed by an electric light company through the agency of one S, and worked with S, under his direction, receiving instructions from no one else. Nothing else appearing, an instruction upon the fellow-servant doctrine was properly refused.

*Master and servant—Electric light company and lineman—"Safe place"*—It is not the duty of an electric light company to furnish a lineman with a safe pole upon which to work. The inspection of poles pertains to the duty of a lineman, and is an auxiliary and preliminary part of his work.

*Facts not charging an electric light company with knowledge of a lineman's special danger—Facts not tending to show negligence—*The fact that an electric lignt company had, from a variety of considerations, condemned a pole as unfit to stand beyond a particular season does not charge it with knowledge of a lineman's danger in climbing the pole during that season; and proof of the company's silence with regard to such condemnation does not tend to show neglect of duty towards a lineman.

*Evidence—The opinion of an expert must be circumscribed by his proved qualifications—*That one is an expert in the taking of x-ray photographs of joints of the human body and qualified to testify that certain lines would appear in a photograph of a normal joint, does not qualify him to testify to his opinion that a fracture and a filling in of a cartilage accounted for the non-appearance of these lines in a photograph of a joint in question.

*Evidence—Aid to one injured not a recognition of liability for the injury—*The mere furnishing of a doctor or nurse by an employer to one injured while in his employ has no tendency to show recognition of liability.

*Agency of a director—*The mere fact that one is a director of a corporation does not authorize him to act for the corporation in employing a doctor to care for one injured while in its employ.

*Agency*—The declarations of one assuming to act for another are not admissible to prove agency.

*Agency*—Agency must be shown before the acts and declarations of one can be received against another as his principal.

CASE for negligence. Plea, the general issue. Trial by jury, Washington County, September Term, 1897, *Tyler, J.,* presiding. Verdict and judgment for the plaintiff. The defendant excepted.

> *John W. Gordon* and *Richard A. Hoar* for the plaintiff.
> *Senter & Goddard* and *H. A. Huse* for the defendant.

MUNSON, J. The plaintiff was injured by the fall of an electric-light pole, at the top of which he was working. There was nothing in the appearance of the pole as it stood to indicate that it was unsafe. Its decayed condition could easily have been ascertained by digging a few inches below the surface. The plaintiff had been at work for the defendant but a few weeks, and knew nothing of the history of this pole. It was being stripped by direction of the superintendent of the line. The company had decided upon a change of plan which rendered the maintenance of a pole at that point unnecessary, and the plaintiff understood that the pole was to be taken down for that reason. The company had before this decided to reset it that fall because of its unsound condition. This fact was not communicated to the plaintiff nor to the person with whom he was working.

The plaintiff had had some previous experience as a lineman, and entered the defendant's service with an understanding that climbing was to be a part of his work. He knew that poles became decayed below the surface after a time, that of poles of the same variety some became decayed sooner than others, and that some test was necessary to ascertain this condition. He made no examination of the pole which caused his injury.

The pole in question was one of two which stood on opposite sides of the street supporting the span-wire from which the light was suspended.    There was one guy-wire running from near the top of the pole, in a direction opposite to that of the span-wire, to a house, where it was fastened to a stone-wall. The plaintiff had just detached and lowered the end of the span-wire, and was changing his position to cut the guy-wire, when the pole fell.    The pole as set in the ground, if it had been sound, would have held the plaintiff regardless of the wires.

The connection of this pole with the other could have been broken as well by going up the other pole and detaching the span-wire at that end.    There were so many wires attached to that pole that it could not have fallen.    Nothing appears as to a safer method of disposing of the guy-wire than may be inferred from the facts regarding its fastening as above stated.

It appears that some poles in a line will begin to decay by the second year; that two or three years later they should be examined to ascertain their condition; that some will be found to require resetting or extra guying within a short time after; that defendant's line was set in 1888, and that the work of resetting it was commenced in 1894; that owing to the impracticability of doing this work in the winter it is the practice to reset in the fall all poles not considered safe to remain until another season; that this was one of the original poles, and that a few months before the accident the superintendent examined it and found it somewhat decayed; and that later it was designated as one of the poles to be reset that fall, as before stated.

The plaintiff testified that he was employed for the company by one Snow; that he worked with Snow and under his direction, and never received instructions from anyone else; that he was working under Snow's immediate direction at the

time of the accident, and that Snow told him to climb the pole. The case does not show what plaintiff's counsel claimed from this in argument or by way of request.    Defendant's counsel requested an instruction upon the doctrine of fellow-servant, but the court made no reference to the subject in its charge, and the defendant now claims that the omission was error.    The claim is not sustainable.    It cannot be said to appear from the case as presented that the plaintiff stood upon any ground that entitled the defendant to a compliance with its request.

The defendant moved that a verdict be directed in its favor, claiming that the uncontradicted testimony of the plaintiff and all the evidence in the case showed that the defendant was not guilty of negligence, but that there was negligence on the part of the plaintiff, and basing the motion upon grounds which raise the question whether the duty of inspecting the pole rested upon the defendant or the plaintiff.    The plaintiff assumes that it was the duty of the defendant to ascertain the condition of the pole before requiring him to climb it, and that when he was put to work upon it without caution he had a right to assume that it was safe.    The defendant contends that the inspection of the pole was a part of the plaintiff's duty as a lineman, and that if he saw fit to climb it without an examination he took the entire risk.

It is impossible to say that it is the duty of the company to furnish the lineman a safe pole upon which to work.    The nature of his employment involves the necessity of working upon poles in various stages of decay.    He contracts with reference to this necessity, and must be held to assume the risks involved in it.    The point of danger is a few inches below the surface, and the condition of the pole can be ascertained only by an examination at that point.    The examination is not to determine whether the designated work shall proceed or not, but to determine in what manner it shall proceed.    It is auxil-

iary to the lineman's principal work, can be conveniently made in connection with it, and requires no separate training.   It is difficult to conceive of any preliminary work that would be more clearly in the line of the servant's duty.   It could hardly be required that a company sending out a gang of men to repair its line, should send other men before them to inspect the poles and determine which could safely be climbed without the taking of precautions.   *McIsaac* v. *Northampton Electric Lighting Co.,* 172 Mass. 89.

But it is said that the defendant had condemned this pole for an ascertained unsoundness, and that its failure to communicate this fact will enable the plaintiff to recover.   We see no ground upon which this view can be sustained.   In fact, the knowledge and action of the defendant were not such as the argument assumes.   The company had condemned the pole as unfit to remain beyond that season, but not as unfit to use through the season, nor as unsafe to climb at the time plaintiff was sent to strip it.   The company's standard of condemnation was with reference to a variety of considerations which might require the condemnation of poles entirely safe for climbing. We have not the means of determining just what that standard was, nor how nearly it coincided with the standard of safety as regards the handling of the pole.   The ascertainment that the pole was "somewhat decayed," a few months before the climbing, did not charge the defendant with knowledge of the lineman's danger.   The decay would be of uncertain progress, and the fact of its existence pointed only to the necessity of certain precautions which it was the lineman's duty to take irrespective of any warning.   The actual condition of the pole at the time and for the purpose of the lineman's work remained an open question, to be determined by the usual inspection.   This preliminary examination affords the basis for an exercise of the lineman's judgment.   There are various methods and appli-

ances by means of which a pole is stripped and lowered, and the lineman selects from these according as he judges the need to be. The defendant's silence gave the plaintiff no right to assume that the pole was safe for climbing, but on the other hand the defendant had a right to assume that in the absence of information the plaintiff would take the usual precautions. Upon this holding there was no evidence of negligence on the part of the defendant, and a verdict should have been directed in its favor.

The defendant claims that the admission of Int. 11 in O'Connor's deposition was error. O'Connor was the witness who took the x-ray photographs of the injured joint. He was asked in Int. 11 to explain why there were no light lines running across at the foot of the perpendicular bones of the leg, and replied that it was because there was a fracture close to the ankle joint which afterwards filled up with cartilage. The defendant insists that this was a conclusion which the witness was not qualified to draw. The witness subsequently testified that in the experience he had had in photographing ankle joints in their natural condition the light lines appeared between the bones, and upon further inquiry that he had taken some sixteen hundred pictures of joints in different parts of the body, and that he considered himself qualified to say whether the white line would appear in a joint in normal condition. But this did not make him an expert as to the character of the injury and the subsequent process to which this difference in the photograph was due. The answer to Int. 11 should have been excluded.

The plaintiff was permitted to testify that the defendant furnished him a nurse. The testimony was offered as tending to show a recognition of liability, and the defendant objected to it as having no such tendency. The court below took the ground that it could not say as matter of law that it had no

such tendency, but that it should be submitted to the jury for them to say whether in view of all the circumstances it had that tendency or not. This was right, if the case presented circumstances which tended to characterize the act as a recognition of liability; but we have found nothing of this nature in our examination of the testimony. It is doubtless true that such evidence might be offered in a connection that would give it the effect claimed, but we think the mere fact that an employer furnishes a physician or nurse for one who meets with a disabling accident in his service ought not to be received as evidence tending to establish his liability. It must be the impulse of every humane employer to provide this assistance for a disabled workman without means, and the rule of evidence ought to be such as to permit his doing it without danger to himself. Such an act should be treated as a humane recognition of an existing necessity, and not as an admission of the justice of a claim not then asserted.

Dr. Chandler, a witness for the plaintiff, was permitted to testify that when he was with the plaintiff about a week after the injury, Dr. Kemp came in and said he came to see a young man in the interest of his company in place of the manager, and that on leaving he told witness to go on with the case, and that in consequence of this witness sent his bill to the defendant. The defendant insists that the admission of this was error, not only for the reason just considered, but because it did not appear that Dr. Kemp's action was authorized by the company. We think this contention is sound. Nothing had appeared showing authority in Dr. Kemp except that he was a director. The mere fact that he was a director did not authorize him to act for the company in this manner. A director of a corporation can bind the company by his separate action only so far as he may be authorized to do so. 1 Mor. Pri. Cor. s. 531. In undertaking to act singly for the company he must be looked

upon as an ordinary agent, and the rules of evidence applicable in cases of agency must be applied.   It is well settled that the agency must be shown before the acts or declarations of the agent can be received against the principal.   I Green. Ev. s. 114, note.   It is true that an express delegation of authority is not necessary, but something must be shown from which authority can be implied.   If there be matters which it is *prima facie* the duty of a director to attend to, this cannot be held to be one of them, for it was not within the scope of ordinary corporate duty.   If it was a matter in which the manager could bind the corporation, the declaration of the director could not be taken as evidence that he was authorized to act in place of the manager.   I A. & E. Enc. Law 2nd Ed. 690.

*Judgment reversed and cause remanded.*