INTERNATIONAL TEXT BOOK COMPANY *v.* CORNELL R. LYNCH.

Special Term at St. Johnsbury, February, 1908.

Present: ROWELL, C. J., TYLER, MUNSON, and WATSON, JJ.

Opinion filed April 10, 1908.

*Corporations—Foreign Corporations—License Tax—No. 20, Acts 1902—Construction—Exemptions—"Doing Business" —What Constitutes—State's Power to Exclude or Regulate Foreign Corporations—Limitations of Power—Federal Constitution and Laws—Interstate Commerce—Subjects— Instruction by Correspondence.*

The only limitation on the power of a state wholly to exclude foreign corporations from doing business therein, or to exact such terms as it chooses for allowing them to do business there, is that the state shall not thereby violate the Constitution or Laws of the United States.

In determining whether a foreign corporation is "doing business" in this State, within the meaning of §55, No. 20, Acts 1902, prohibiting such corporation doing business herein from maintaining an action in this State unless it has paid the annual license tax exacted of such foreign corporations, the test is, not the number of transactions, but whether the intent was to engage in business

in this State, for, if so, a single transaction in that business is a violation of the statute.

Where plaintiff, a foreign corporation, rented and furnished an office in this State, kept some of its supplies there, and placed an agent in charge of the office for the purpose of inducing persons to contract for instruction by correspondence, monthly payments to be made by the students to the agent for remittance to plaintiff, it was "doing business" in this State, within the meaning of §55, No. 20, Acts 1902, prohibiting a foreign corporation, doing business herein without having paid the required annual license tax, from maintaining an action in this State.

The common notion of commerce is reciprocal agreements by which one person delivers to another a material thing for money,—which is a sale, or for another thing, which is barter.

Where plaintiff was engaged in the business of imparting instruction to students in different states wholly by correspondence through the mails, it was not engaged in interstate commerce, within the Federal Constitution, so as to prevent a state from requiring it to pay an annual license tax as a condition precedent to doing business therein under the protection of its laws.

§47, No. 20, Acts 1902, exempting corporations organized solely for educational purposes, cemetery associations, etc., from payment of the license tax required by that Act, applies only to domestic corporations.

GENERAL AND SPECIAL ASSUMPSIT. Plea, the general issue. Trial by court at the June Term, 1907, Caledonia County, *Miles,* J., presiding. Judgment for the plaintiff to recover the full contract price. The defendant excepted. The opinion states the case.

*Harland B. Howe,* and *Herbert W. Hovey* for the defendant.

The court found that the defendant never took any instructions from the plaintiff; that the defendant gave the plaintiff notice that he would not go on under the contract, and that the plaintiff suffered no damages thereby. Therefore, there was error in rendering judgment for the plaintiff to recover the full contract price. *Ferris* v. *Barlow,* 2 Aik. 106; *Derby* v. *Johnson,* 21 Vt. 17; *Boardman* v. *Keeler,* 21 Vt. 77; *Preble* v. *Bottom,* 27

Vt. 249; *Chamberlain* v. *Scott,* 33 Vt. 80; *Morey* v. *King,* 49 Vt. 304; *Clark* v. *Marsiglia,* 1 Denio 317; *Hathaway* v. *Sabin,* 63 Vt. 527.

*G. C. Frye* for the plaintiff.

The contract involved is an entire contract, and the measure of plaintiff's recovery is the contract price. When the plaintiff has done its part or held itself ready and willing to do so, it is entitled to the entire contract price. *Hathaway* v. *Sabin,* 63 Vt. 527; *Chesley* v. *Matthewson,* 40 Vt. 197; *Ely* v. *Dumont,* 186 N. Y. App. 552; *Kabus* v. *Seftner,* 34 N. Y. Misc. 539; *Starr* v. *Liftchild,* 40 Barb. (N. Y.) 541-545; *Homer School* v. *Westcott,* 32 S. E. (N. C.) 885; *Millard* v. *Inhabitants of Egremont,* 164 Mass. 430; *Bingham* v. *Richardson,* 60 N. C. 215; *Ferris* v. *Barlow et al.,* 2 Aik. 106.

Plaintiff is exempt from paying the license tax because it is not "doing business" in this State within the meaning of the statute. *Toledo Commercial Co.* v. *Glen Mfg. Co.,* 45 N. E. Rep. 197; *Mearshon & Co.* v. *Lumber Co.,* 187 Pa. St. 12; *Caesar et al.* v. *Capell et al.,* 83 Fed. 403; *Davis & Rankin etc. Co.* v. *Dix et al.,* 64 Fed. 406; *People ex rel. The Harlan & Hollingsworth Co.* v. *Campbell,* 139 N. Y. 68; *Cooper Mfg. Co.* v. *Ferguson et al.,* 113 U. S. 727; *People ex rel. Brewing Co.* v. *Roberts,* 22 App. Rep. (N. Y.) 282; *State* v. *American Book Co.,* 69 Kan. 1.

But the plaintiff was engaged in interstate commerce, within the meaning of the commerce clause of the Federal Constitution, and so it was not within the power of the State to tax plaintiff for the privilege of doing business therein. *Clementi* v. *Golden,* 2 Camp. 25; *Clayton* v. *Stone,* 2 Paine (U. S.) 382; *Church* v. *Lintin,* 25 Ontario (Canada) Rep. 131; *Drury* v. *Ewing,* 1 Bond 54c; *Kindel* v. *Beck etc. Co.,* 24 L. R. A. 311; *French* v. *State of Texas,* 52 L. R. A. 160; *Cooper Mfg. Co.* v. *Ferguson et al.,* 113 U. S. 727; *County of Mobile* v. *Kimball,* 102 U. S. 691; *Webber* v. *Virginia,* 103 U. S. 344; *City of Bloomington* v. *Boreland,* 137 Ill. 534; *Caldwell* v. *No. Carolina,* 187 U. S. 622; *Robbins* v. *Shelby Taxing District,* 120 U. S. 489; *Asher* v. *Texas,* 128 U. S. 129; *Stoutenburgh* v. *Hennick,* 129 U. S. 141; *Lyng* v. *Michigan,* 135 U. S. 161; *Crutcher* v. *Ken-*

*tucky,* 141 U. S. 47; *Brenan* v. *Titusville,* 153 U. S. 289; *Stoddard* v. *Morgan,* 185 U. S. 27; *Brown* v. *Maryland,* 12 Wheat. 419; *Brown* v. *L. & N. Ry. Co.,* 4 B. & S. 326; *Shiels* v. *G. N. R.,* 30 L. J. Q. B. 331; *Sulley* v. *Attorney General,* 28 L. J. Ex. 320; *Re Charles,* 13 L. R. Eq. 638; *Grant* v. *Anderson,* 1 Q. B. 108; *Singleton* v. *Roberts,* 70 L. T. 687; *Grainger* v. *Gough,* 1 Q. B. 71.

TYLER, J. This action is general and special assumpsit, brought to recover the sum claimed to be due upon a contract for a course of correspondence instruction.

The plaintiff is a corporation chartered in the State of Pennsylvania and having its principal office in Scranton in that State. At the time this contract was made it had an agent with an office at St. Johnsbury in this State in which office some of the plaintiff's supplies were kept. The office rent was paid by the plaintiff. The duties of the agent were to solicit persons to receive the instruction furnished by the plaintiff and obtain from them an agreement, called "Contract for Scholarship," and five dollars in money, which sum the agent forwarded, with the contract, to the plaintiff for its acceptance or rejection.

In January, 1905, the defendant at the agent's solicitation, entered into a written contract with the plaintiff, the substance of which was that the plaintiff was to furnish him a course of correspondence instruction in said school upon the subjects embraced in the "Building and Contractors Scholarship," with copyrighted instruction papers, examination questions and drawing plates prepared for such scholarship, for which the defendant was to pay the plaintiff five dollars when he signed the contract and five dollars each month until sixty-three dollars and ninety cents was paid, or fifty-seven dollars and sixty cents if full payment was made within sixty days. Upon full payment the defendant was to be entitled to a certificate of scholarship, etc. The first five dollars and the contract were forwarded to and accepted by the plaintiff, which, in return, sent volumes of instructions to the defendant who subsequently made four monthly payments upon the contract, when he notified the plaintiff's agent that he should make no more payments and proceed no further under the contract. The plaintiff has always been ready to perform the contract on its part. The defendant never took any of the instructions furnished him.

The plaintiff suffered no damage except the failure to receive the money in full that it would have been entitled to if the defendant had performed the contract.

The plaintiff never paid the annual license tax that is due under our statute from foreign corporations nor obtained the required certificate from the secretary of state.

Upon these facts the trial court rendered judgment for the plaintiff for the full contract price for instruction, to which the defendant excepted.

Section 55 of Act 20, passed in 1902 and in force when this contract was made, provided that, if any corporation or association organized under the laws of this State, or any corporation or association organized under the laws of any state or government other than Vermont and doing business herein, shall not have paid the annual license tax required of such corporation or association, on or before the first day of May in each year, such corporation or association shall not maintain an action in this State subsequent to such date, unless prior to the making of such contract it shall have paid its annual license tax.

1. The plaintiff contends that the contract did not contemplate the transaction of business by the plaintiff in this State within the meaning of the statute, but it does not state in its brief the grounds upon which it bases this claim. The case evidently does not fall within the class of cases denominated isolated transactions. It does not appear whether orders were solicited and taken by the agent from other persons besides the defendant. If it was the only order taken in this State it would not determine the question whether it constituted doing business here. Many cases might be cited where foreign corporations made single transactions in other states, and in the usual course of their business, and were not held to be doing business in those states. The prohibition is upon foreign corporations engaging in business in the domestic state, and the test is not that it is a single transaction, but that it is done with the intent to engage in business therein, and if so, then a single act in that business is in violation of the statute. So it was held in *Florshein etc. Co.* v. *Lester,* 60 Ark. 120, 46 Am. St. Rep. 162, that the taking of a single mortgage to secure a past due debt, with no intention apparent to transact other business of the kind in the state, was not doing business within the meaning of the

statute. On the other hand, the appointment of agents in the domestic state for the purpose of working up a loan business and inducing people to effect loans, and the effecting of loans is held to be doing business in that state. *U. S. Saving etc. Co.* v. *Miller,* 47 S. W. Rep. 17, (Tenn. Ch.). The same is held in case of the transmission to an agent of insurance policies made out on his application in the domestic state and sent to him there for delivery to the persons insured on receipt of the premium. *Berry* v. *Knights Templars' etc.,* 46 Fed. Rep. 439.

The State of Maryland has a statute providing that any corporation not chartered therein shall be deemed to hold and exercise its franchises within the State and be liable to suit in any of the courts of the State on any dealings or transactions therein. An agent within the State was appointed jointly by two railroad companies—one domestic and the other foreign—to solicit traffic over both roads the agent having an office and advertising for business over both connecting roads; held, that the foreign corporation was transacting business in Maryland within the meaning of the law. *Central of Georgia Ry. Co.* v. *Eichberg,* 68 Atl. 690, (Maryland Court of Appeals).

In *Metropolitan L. Ins. Co.* v. *New Orleans,* 205 U. S. 395, 51 L. ed. 853, it was held that those engaged in the business of lending money in a state, being nonresidents, might be taxed upon the capital employed in such business precisely as the state could tax the capital of its own citizens. In the same line of reasoning is *New York ex rel. Burke* v. *Wells,* decided by the U. S. Supreme Court at the October Term, 1907, 28 Sup. Ct. 193.

In this case an office was hired by the plaintiff and presumably suitably fitted up for occupancy, and the agent's business was soliciting orders in this State, some of the documents necessary for the courses of instruction being kept by him and the monthly payments being made to him for remittance to the plaintiff.

Upon the facts stated it is clear that the plaintiff was doing business in this State under its contract with the defendant.

The domestic state has the right to exclude entirely any foreign corporation from doing business within its limits, and it follows that the right of such corporations to engage in business in another state depends solely upon the law of that state.

They have no right to exercise their franchises in that state except upon such terms as it may impose.    There is nothing in the Federal Constitution that prevents a state from prescribing the terms on which foreign corporations shall come within its borders and carry on business with its citizens.    *Pembina Consol. Silver Mining Co. v. Pennsylvania,* 125 U. S. 186; *Paul v. Virginia,* 8 Wall. 168; *Orient Ins. Co. v. Daggs,* 172 U. S. 557; *Blake v. McClung,* 172 U. S. 239; *Lycoming Fire Ins. Co. v. Wright,* 55 Vt. 526, and *Granite State Mutual Aid Association v. Porter,* 58 Vt. 581, 3 Atl. 545, where the law is clearly stated. These rules are of course given with the qualification that the state laws must not be repugnant to the Constitution and laws of the United States.

It follows, therefore, that this action cannot be maintained unless the contract is protected by the regulations of interstate commerce.

2.    The plaintiff contends that the furnishing of instruction to persons by correspondence and the transmission through the mails of written and printed instruction by means of letters, pamphlets and books was commerce, and that furnishing it to the defendant in the manner stated was interstate commerce. The common idea of commerce is reciprocal agreements by which one person delivers to another a material thing for money, which is a sale, or for another thing, which is an exchange.    The plaintiff cites upon this point *McCall v. California,* 136 U. S. 104, 34 L. ed. 392, but there the business was the soliciting by an agent of passenger traffic over a railroad.    The Court said the test was: "Was this business a part of the commerce of the road?"    "Did it assist, or was it carried on with the purpose to assist, in increasing the amount of passenger traffic of the road?"    If it did, the power to tax it involved the lessening of the commerce of the road; so it was held that the business of the agent was a part of interstate commerce.

In *Lyng v. Michigan,* 135 U. S. 161, 34 L. ed. 150, the only question decided was whether a state could lay a tax on an article of interstate commerce which in that case was intoxicating liquor; held, that it could not.

In *Crutcher v. Kentucky,* 161 U. S. 47, 35 L. ed. 649, it was held that a state tax upon express business was unconstitutional and void.

That the business of insurance does not generally appertain to interstate commerce was held in *Paul* v. *Virginia,* 75 U. S., 8 Wall 168, 19 L. ed. 357, and that decision has often been reaffirmed. In *Hooper* v. *California,* 155 U. S. 648, 39 L. ed. 297, the Court said: "The business of insurance is not commerce. The contract of insurance is not an instrumentality of commerce. The making of such a contract is a mere incident of commercial intercourse," * * *. In other cases decided by that Court it has been held that issuing a policy of insurance was not a transaction of commerce; that policies are only contracts of indemnity against loss by fire; that the contracts are not articles of commerce in any proper meaning of the term; that they are not subjects of trade and barter; that they are not commodities to be shipped or forwarded from one state to another and then put up for sale; that they are mere personal contracts between the parties. See cases cited in opinion of Mr. Justice White in *Hooper* v. *California.*

It has been held that the telegraph is an instrument of commerce. *Western U. Teleg. Co.* v. *Pendleton,* 122 U. S. 347, 30 L. ed. 1187; *Ratterman* v. *Western U. Teleg. Co.,* 127 U. S. 414, 32 L. ed. 229. As telegraphic communications carried on between different states are interstate commerce, it follows that a general license tax on a telegraph company doing business in different states is unconstitutional, as it affects its entire business, interstate as well as domestic. *Leloup* v. *Mobile,* 127 U. S. 640, 32 L. ed. 311. Chief Justice Waite said in *Western U. Teleg. Co.* v. *Texas,* 105 U. S. 460: "A telegraph company occupies the same relation to commerce as a carrier of messages that a railroad company does as a carrier of goods. Both companies are instruments of commerce, and their business is commerce itself."

But it has been held that a city ordinance imposing a license fee upon every telegraph company or agency for business done exclusively in the city, not including business done for the government, its officers or agents, is not void as an interference with interstate commerce, although the same companies may also send interstate messages. *Postal Teleg. Cable Co.* v. *Charleston,* 153 U. S. 692, 38 L. ed. 871.

We have referred to the foregoing cases to show the extent to which the laws regulating interstate commerce have been car-

ried in their operation, but we find no authority and can discover no reason why these laws should be construed to regulate correspondence between citizens of different states through the mails. The transportation of letters and printed matter of all kinds is regulated by the postal laws of the country and not by the laws of interstate commerce. The obstruction of commerce and of the mails are offences referred to and treated by the Supreme Court as controlled by separate and distinct laws. *Ill. Cen. R. Co.* v. *Illinois,* 163 U. S. 142, 41 L. ed. 107; *Re Debs,* 158 U. S. 564, 39 L. ed. 1092.

3. The plaintiff contends that it was organized for educational purposes and is therefore exempt from payment of the license tax under the last clause of section 47 of the Act, which reads:

"Corporations organized solely for charitable, religious or educational purposes, cemetery associations, * * *, shall be exempt from the payment of the annual license tax." It is evident, however, that this exemption relates to domestic corporations only, for it is not conceivable that a foreign cemetery association could do business here.

*Judgment reversed and judgment for the defendant to recover his costs.*