LIVINGSTON MANUFACTURING COMPANY *v.* RIZZI BROTHERS.

October Term, 1912.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, and POWERS, JJ.

Opinion filed February 5, 1913.

*Harmless    Error—Exclusion    of    Evidence—Trial—Order · of*
*Proof—Witnesses—Examination—Redirect—Cross-examina-*
*tion—Principal   and   Agent—Acts   and   Declarations   of*
*Agent—Preliminary   Proof—Agency   by   Ratification—Req-*
*uisite Proof—Interstate Commerce—State Control—Foreign*
*Corporations—P. S. 776.*

Any error in the exclusion of offered evidence is harmless where the
    same evidence is subsequently admitted.

Where, for the purpose of laying the foundation for the admission of a
    letter, plaintiff showed it to defendant on his direct-examination,
    and he identified it and admitted that he wrote it, and defendants'
    counsel thereupon asked him what a $75 payment referred to in
    the letter was for, that question was properly excluded as not cross-
    examination, no offer having been made, and the expected answer
    not being obvious.

Where the subject of the relation to plaintiff of a person whom de-
    fendants claimed to have been plaintiff's selling agent was first
    touched on in cross-examination of plaintiff's witness, he was
    properly further examined thereon on redirect.

If there was no evidence in support of defendant's claim that a desig-
    nated person was plaintiff's agent, the admission of evidence that
    the person was not such agent was harmless.

A question asked by defendants on cross-examination of plaintiff's
    witness, on the erroneous theory that his testimony in chief
    tended to show that he was plaintiff's agent, was rightly excluded
    as not proper examination, and deferred till defendants had the
    case.

The mere acts and sayings of an alleged agent are no evidence of the
    agency.

Before the acts and declarations of an alleged agent within the scope of his alleged employment can be received in evidence against the alleged principal, there must be evidence of the agency.

Agency by ratification can be shown only by evidence that the alleged principal knew what had been done, and that it was done for him; and that he assented thereto.

The sale in this State, by a corporation in a sister state, to a buyer resident here, of an article manufactured by the seller in the sister state, followed by shipment to the buyer here, is interstate commerce, not subject to state control, and so not affected by P. S. 776, prohibiting a foreign corporation from maintaining an action in this State on a contract made therein, unless it has obtained the certificate required by P. S. 774 for a foreign corporation to do business in this State.

GENERAL ASSUMPSIT. Plea, the general issue. Trial by jury at the September Term, 1911, Washington County, *Taylor*, J., presiding. Verdict directed for the plaintiff, and judgment thereon. The defendant excepted. The opinion states the case.

*M. M. Gordon* for the defendants.

*John W. Gordon* for the plaintiff.

POWERS, J. The plaintiff is a corporation organized under the laws of the state of Maine, having its principal place of business at Rockland in that state. It manufactures and sells granite cutting machines and among these is one known as the Padbury Surfacer. The plaintiff's evidence tended to show that one Carroll, who resides in Barre, was its agent in selling granite tools and supplies, and had been such agent since March 1, 1910. That Carroll solicited and obtained the order for the surfacer here in question. That the defendants did not want the bush hammer which went with it, and asked Carroll to get a price on the machine without this hammer. That a week or so after this talk, Carroll received word that the plaintiff would furnish the machine without the hammer for two hundred and twenty-five dollars. That he so reported to the defendants, who gave him an order for the machine which he forwarded to the plaintiff at Rockland. The plaintiff shipped the machine to the defendants, and it was set up in their shed at Barre and turned over to them

August 23, 1910.   That Carroll was the only person with authority to solicit or obtain this order, and that the Graham whose name appears in the case was only employed to do certain repairing for the plaintiff.   That the defendants kept and used the machine without notice of its non-acceptance being given to the plaintiff or its agent Carroll until December 5, 1910, when they wrote the plaintiff a letter enclosing a check for seventy-five dollars, stating that this was in payment for the surface cutter (head) and that the frame was unsatisfactory and subject to plaintiff's order.

1.   The plaintiff called Stephen R. Rizzi, one of the defendants, as a witness, and showed by him that the plaintiff sent the defendants monthly statements showing the amount claimed to be the full contract price,—$225—and requesting payment, and that the defendants never made reply to these statements until they sent the letter of December 5, hereinbefore referred to,—claiming that this silence and failure to complain was a circumstance from which an inference against them could be drawn.   Thereupon, the defendants offered to show that they bought the machine from one Graham, and that they notified him of the unsatisfactory condition of the machine, and that that was the reason why they did not sooner notify the plaintiff. This evidence was excluded and the defendants excepted. . We need not examine this question, for the witness was later allowed to say that the reason why they did not sooner notify the plaintiff was that they had nothing to do with Mr. Livingston (evidently meaning the plaintiff) about the machine, because they bought it, not through Livingston, but through Graham.   So if there was any error in excluding the offered evidence it was rendered harmless by its subsequent admission.   *In re Claflin's Will,* 75 Vt. 191, 52 Atl. 1053, 58 L. R. A. 261; *Walker* v. *Collins,* 61 Vt. 542, 17 Atl. 744; *Davis* v. *Randall,* 85 Vt. 70, 81 Atl. 250; *Hindle* v. *Healey,* (Mass.) 90 N. E. 511.

2.   For the purpose of laying a foundation for the admission of the letter of December 5, the plaintiff showed the letter to this defendant and the latter identified it and admitted that he wrote it for his firm.   Thereupon, the defendants' counsel asked the witness what the seventy-five dollar payment was for. An objection being made, the question was excluded and the defendants excepted.   Various reasons might be given why this ruling was free from error.   In the first place, it was not cross-

examination and no offer was made and the record does not so obviously disclose the expected answer as to make an offer unnecessary. Again, the ruling only deferred the question until the defendants had the case. And still further, Mr. Bicknell, the plaintiff's manager, admitted that the defendants said when they paid the seventy-five dollars that it was for the ''head'' which went with the machine. And, finally, the letter itself was admitted and it showed this fact.

3. When Mr. Bicknell was on the stand, counsel for the defendants cross-questioned him regarding Graham's relation to the plaintiff and the order for this surfacer. This was new matter and a subject not alluded to in his direct examination. On re-direct examination, he was allowed to testify, subject to defendants' objection and exception, that Graham had never been employed by the plaintiff to make a contract for this surfacer. In this there was no error. The defendants' theory was that Graham was the selling agent; if there was any evidence in the case tending to sustain this claim, this evidence was, on plainest principles, admissible to meet it; if there was not any evidence so tending, its admission could have done no harm.

4. Graham was a witness for the plaintiff. He testified that all he had to do with the sale of the machine was to notify Carroll that the defendants wanted a surfacer and to recommend it to them. That he made certain repairs on it and left it in apparent good condition. No evidence had come into the case to show that Graham was plaintiff's agent or that he had any authority to receive notice to take the machine away, or that he had communicated to the plaintiff or any of its officers or agents the talk he had with the defendants about the machine. The defendants then claimed the right to ask him if the defendants did not at some time notify him to take the machine away,—basing the claim on the ground that the witness had testified that the sale was made through him and that the plaintiff had ratified his acts by accepting the order and shipping the machine. The evidence was excluded, but only because it was not proper cross-examination, and therefore should be deferred until the defendants had the case. The position of the court was correct and the ruling free from error.

It was the claim of the defendants all along through the trial that Graham was the plaintiff's agent. Many of the exceptions argued before us are predicated upon the assumption that there

was evidence, either offered or received, which tended to establish such agency,—if not by appointment, by adoption. But this claim cannot be sustained. The only evidence of an agency by appointment, either received or offered, was such as was afforded by the acts and sayings of Graham, the alleged agent. This was not enough. Agency may be shown by circumstantial evidence; but the mere fact that one person assumes to act for another is not, of itself, sufficient to establish the relation of principal and agent. 3 Ell. Ev. §1635. The acts· and admissions of an agent in the scope of his employment are admissible against the principal. But this rule presupposes two things: That there is evidence tending to prove the agency; and that the act or admission is within its scope. "The *fact* of agency must, of course, be somehow evidenced before the alleged agent's declarations can be received as admissions; and therefore the use of the alleged agent's assertions that he is agent would, for that purpose, be inadmissible, as merely begging the very question." 2 Wig. Ev. §1078. This is the established doctrine of this Court. It was announced in *Dickerman* v. *Fire Insurance Co.*, 67 Vt. 609, 32 Atl. 489, wherein it was held that the fact that· one claiming to be the agent of a fire insurance company had its blank proofs of loss was not evidence tending to show that he was the agent of that company. It was said in *Sias* v. *Consolidated Lighting Co.*, 73 Vt. 35, 50 Atl. 554, that "it is well settled that the agency must be shown before the acts or declarations of the agent can be received against the principal," and this was approved in *Prouty* v. *Nichols*, 82 Vt. 181, 72 Atl. 988, 137 Am. St. Rep. 996.

Nor can the defendants stand on the ground of ratification, for there was no offer to show knowledge on the part of the plaintiff of what Graham was doing or had done. Before ratification takes place, knowledge and assent, express or implied, must be shown. 3 Ell. Ev. 1635. The alleged principal must not only know what has been done, but that it was done for him. "Acts done and declarations made by one assuming to be agent, do not and cannot prove the agency, or the extent of the agent's power, unless they are made known to the principal and in some way ratified by him, after being informed of what had been done, and the character in which it was done." *Huntsville, etc. Ry. Co.* v. *Corpening*, 97 Ala. 681, 12 South. 295; *Reynolds* v.

*Continental Ins. Co.*, 36 Mich. 131.  This, too, is a rule fre-
quently recognized by this Court.  Vt. Dig. 2222, *et seq.*

At the close of all the evidence, the defendants moved for
a directed verdict on the ground that it had been shown that the
plaintiff was a foreign corporation doing business in this State,
and had not proved a compliance with P. S. 774,—wherefore it
was precluded by P. S. 776 from maintaining this action.   This
motion was over-ruled, *pro forma,* and the defendants excepted.
The reply to this contention is that the subject-matter of this
contract is interstate commerce, and consequently is not subject
to state control, and the statute cannot apply.

Assuming that the burden of proof was on the plaintiff to
show compliance with the statute referred to, and assuming that
the evidence shows that the plaintiff was ''doing business'' in
this State, and assuming still further that this contract was
made in this State,—the motion was properly overruled.

That the power of a state to regulate and control foreign
corporations seeking to do business therein is limited by the pro-
visions of the Federal Constitution regarding interstate com-
merce is common learning.   It was fully recognized by this
Court in *International Text-Book Co.* v. *Lynch,* 81 Vt. 101, 69
Atl. 541.   The following are some of the cases decided in state
courts wherein statutes similar to ours have been held to be in-
effective because they interfered with interstate commerce.
*Greek-American Sponge Co.* v. *Richardson Drug Co.*, 124 Wis.
469, 109 Am. St. Rep. 961, 102 N. W. 888; *Coit & Co.* v. *Sutton,*
(Mich.) 25 L. R. A. 819, 60 N. W. 690; *Mearsham* v. *Pottsville
Lumber Co.*, 187 Pa. St. 12, 67 Am. St. Rep. 560, 40 Atl. 1019;
*Lehigh Portland Cement Co.* v. *McLean,* (Ill.) 92 N. E. 248, 137
Am. St. Rep. 322.   See, also, note to *Hessig-Ellis Drug Co.* v.
*Sly,* 22 Ann. Cas. 554.

The question presented is a federal one, and the decisions
thereon of the Supreme Court of the United States are, of course,
binding upon us.   It was held in *International Text-Book Co.* v.
*Pigg,* 217 U. S. 91, 30 Sup. Ct. 481, 54 L. ed. 678, 24 L. R. A.
(N. S.) 493, 18 Ann. Cas. 1103, that a Kansas statute of similar
import was an unconstitutional interference with interstate com-
merce, and that the action could be maintained, notwithstanding
the statutory provisions to the contrary.    When the Lynch
case, hereinbefore cited, which arose under a statute not essen-
tially differing from the one here involved, reached the Supreme

Court of the United States, it was held that the business of that plaintiff was interstate commerce and beyond the reach of the statute. *International Text-Book Co.* v. *Lynch,* 218 U. S. 664, 31 Sup. Ct. 225, 54 L. ed. 1201. The opinion therein is a mere memorandum, the court being content to follow the Pigg case.

The case in hand is a much clearer case of interstate commerce, and is obviously of that class over which the power of Congress is exclusive, since it includes the transportation, purchase and sale of commodities. This is shown by *State* v. *Peet,* 80 Vt. 449, 68 Atl. 661, 14 L. R. A. (N. S.) 677, 130 Am. St. Rep. 998, a case wherein the principle here involved is satisfactorily discussed.

In the consideration of this question we have treated the case just as counsel have presented it, and have given no consideration to the question whether a motion for a verdict could be sustained even if the case was one to which the statute could be applied. This question is not raised.

There was nothing for the jury, and the court properly directed a verdict for the plaintiff for the amount of its claim.

*Affirmed.*