## Templeton Construction Corporation v. John F. Kelly and Mary Kelly

[296 A.2d 242]

No. 116-71

Present: Shangraw, C.J., Barney, Smith, Keyser and Daley, JJ.

Opinion Filed October 3, 1972

*Thomas J. Politano, Esq.*, Wilmington, for Plaintiff.

*John F. Kelly, Esq.*, Cohoes, N.Y., *Pro se.*

*Timothy J. O'Connor, Esq.*, Brattleboro, for Defendants.

**Daley, J.** This is an appeal from a judgment for the plaintiff in a civil action after a trial by court in the District Court of Vermont, Unit No. 6, Windham Circuit.

In 1970, the defendants contracted to purchase a prefabricated log cabin from Joseph Lassiter, a representative of Panabode, Inc., the manufacturer and distributor of the above-mentioned log cabin (hereinafter referred to as the Panabode cabin). Mr. Lassiter was also a licensed surveyor and engineer.

In September, 1970, the defendants and Donald Albano, president of the plaintiff corporation, met at the home of Mr. Lassiter for the purpose of negotiating and executing a contract for the construction of a septic system and a foundation upon which the Panabode cabin was to be erected. Prior to this

meeting, Mr. Lassiter had already surveyed and prepared sketches of the lot upon which the Panabode cabin was to be erected, and conducted tests of the soil on the lot to determine the type of septic system best suited for that soil. During the course of this meeting, a typewritten memorandum was prepared, based generally on the recommendations of Mr. Lassiter, which was signed by both Mr. Albano and Mr. Kelly, and constituted the written construction contract between the plaintiff and the defendants.

The construction contract read as follows:

"Grades per sketch.

12" drive 8" coarse gravel 4" finish gravel including parking lot

Septic

1000 gal. concrete tank with dosing siphon 10–50 foot (500' total field lines 3" wide 10' apart on center line, 15" of 1" stone in ditch, untreated building paper, 18 to 24" earth cover, distribution boxes set in mortar on solid earth and leveled. 2" of stone is over pipe—Remove topsoil first—grade to even slope. Control depth of ditches and top of pipe with transit to grade of 4" per 100' plus or minus ½". Replace topsoil, seed and cover with hay.

General divert surface water away from house and septic field.

Foundation—Follow elevations on plan—Half of footing may be stepped up 8"

Footing 8 x 16

Size: 27'9½" x 37'9½" plus 0, minus ½

Level all over top within ¼" total

Anchor bolts every 6'—2 at corners

3—8 x 16 vents

1—2' x 3' door opening

No topsoil inside foundation—Provide drain from inside to outside

Provide building sever to specified locations

Provide foundation draining 4" O.B. perf and 1½ stone at top of footing or lower. Dig and fill ditch from well to house

Provide and install culvert 15" x 30'.

$4555.00 upon completion."

The plaintiff then constructed a septic system and foundation for the defendants. Subsequently on October 8, 1970, the plaintiff submitted a statement to the defendants for the amount as stated in the written contract. On October 12, the defendants authorized the release of the total amount of the contract price and directed the bank wherein the funds covering the contract were deposited to forward a check for that amount to the plaintiff. However, the evidence shows that the defendant, Mr. Kelly, subsequent to this authorization to release the funds, first discovered in a conversation with Mr. Lassiter that the dosing siphon had not been installed. He then notified the bank to reduce payment by $555.00.

Subsequently, the plaintiff requested that an additional sum of $563.50 be paid to cover the additional cost of increasing the height of the foundation wall. This item resulted from a telegram which was sent by defendants to plaintiff during the course of construction. It stated, "Bring foundation to full basement size as per conversation at $1.15 per block."

During this time, a substantial controversy arose between the defendants and the plaintiff as to certain deficiencies in the construction that began coming to the defendants' attention. Following several communications between the defendants and the plaintiff, the plaintiff, on November 24, sent a statement to the defendants for $618.50, which was the difference between the contract price and the amount that it received and the extra cost of increasing the height of the foundation wall, minus a credit for the dosing siphon called for in the written contract which was not installed. The defendants refused to pay any amount, and the plaintiff instituted this action in December, 1970.

The plaintiff seeks to recover the balance due on the contract, plus certain extras including the increasing of the height of the foundation wall. The defendants deny any indebtedness and claim there is nothing due to the plaintiff because of the failure to complete the contract according to its terms. The defendants also claim that the extras were unauthorized and were not required under the terms of the contract.

The defendants also filed a pleading that they entitled "counterclaim". In paragraphs one through seven of this pleading the defendants claim that the plaintiff has willfully refused to perform the work called for in the contract; that

it performed certain work in a careless and unworkmanlike manner, and that it willfully failed to provide specific items called for in the contract. However, for some reason, the trial court did not entertain the "counterclaim" although much of the evidence introduced by the defendants related to matters set forth in this pleading.

The allegations of the defendants in paragraphs one through seven of their "counterclaim" pleading, by their nature, constituted a demand made against the plaintiff in the suit for the purpose of liquidating the whole or part of its claim. *Lalime* v. *Desbiens*, 115 Vt. 165, 168, 55 A.2d 121 (1947). This remedy, commonly known as a set-off, was available to them under our practice at the time this action was brought. *Franklin Co. Realty* v. *Cunnius & Cunnius*, 127 Vt. 452, 456, 252 A.2d 524 (1969). The trial court, therefore, should have considered paragraphs one through seven of this pleading and made findings relative thereto.

Paragraphs eight and nine of the defendants' "counterclaim" set forth allegations of fraud and deceit. Such claims, being tortious in nature, could not have been the subject of a set-off under the law of this jurisdiction when the pleadings were filed. See 12 V.S.A. § 5461 and *Hudson* v. *Nute*, 45 Vt. 66, 68 (1872). Although the trial court was correct in not entertaining these allegations at the time the cause was heard, current procedure allows permissive counterclaims of this nature. See D.C.C.R. 13.

The defendants claim the plaintiff is not entitled to recover upon the contract because of a willful departure from its provisions, particularly in reference to the septic distribution system. The evidence is uncontroverted that the defendants did not receive the type of system they contracted for. The trial court found, "There is no question but that the distribution system originally laid out by plaintiff was different from the plan provided by Mr. Lassiter. . . ." It then went on to find that an alternative arrangement was worked out by Mr. Lassiter making use of distribution boxes and lines already installed without making objection to the manner of this construction then in progress. The alternate arrangement, so called, required an additional distribution box, made a different utilization of field lines which utilized lower grades.

The system was changed from a field type to a so-called bed type employing a single bed. The court further found that the alternative arrangement was recommended by Mr. Lassiter acting as agent for the defendants, and that the defendants never repudiated or rejected this arrangement. Finding that Mr. Lassiter acted as agent for the defendants ". . . insofar as the septic system is concerned . . .", the court concluded that the system was constructed substantially as contracted and as modified by the alternative arrangement suggested by Mr. Lassiter and accepted by the plaintiff.

It is evident that the trial court considered the modification or alteration of the septic distribution system as constituting compliance with the terms of the contract. In so doing, the court attributed authority for the changes as a product of a principal and agent relationship between the defendants and Mr. Lassiter. The defendants deny and the record discloses no expressed authority on the part of the defendants for Mr. Lassiter to act as their agent. Mr. Lassiter also denied that he acted as agent for the defendants.

The plaintiff assumed that Mr. Lassiter was an agent for the defendants principally because of his being on the construction site on many occasions, giving directions to the plaintiff's workmen and suggesting changes in the installation of the septic distribution system. However, it is well established in this jurisdiction that an agency cannot be shown by the mere acts and declarations of the supposed agent made out of court. *Conn Boston Co.* v. *Griswold*, 104 Vt. 89, 97, 157 A. 57 (1931); *Livingston Mfg. Co.* v. *Rizzi Bros.*, 86 Vt. 419, 423, 85 A. 912 (1913); *Sias* v. *Consolidated Lighting Co.*, 73 Vt. 35, 42, 50 A. 554 (1901).

In the absence of expressed or implied authority, the relationship of principal and agent would not arise unless the defendants here ratified and accepted as their own the acts of one purporting to act for them. However, in order to constitute ratification, it is necessary that it appear that the one ratifying have knowledge of the material facts and the act that he is supposedly adopting of his own. *White* v. *Hight*, 112 Vt. 420, 425, 26 A.2d 86 (1942); *Livingston Mfg. Co.* v. *Rizzi Bros., supra.*

The record is devoid of any testimony that the defendants had any knowledge of the extent of the change in the design of the septic distribution system until the same had been accomplished. The defendants were not at the construction site during the progress of the plaintiff's work. The septic system was in the ground at the time the defendants were informed that the dosing siphon called for in the original contract had not been installed; in fact it has never been installed. The defendants, when informed about the lack of the dosing siphon, acted promptly to withhold money called for under the contract; when they came to the site after the plaintiff had finished construction, they made numerous complaints relative to the before-mentioned septic system and other construction called for in the contract and the manner in which the work was performed, and continued to make these complaints throughout the trial.

The evidence before the court, taken as a whole, does not support the trial court's finding that the defendants did not repudiate or reject the alternative construction recommended by Mr. Lassiter. Nor are there any findings by the court that the defendants had any knowledge concerning the material facts of this alteration. Clearly, the conclusion that the relationship of principal and agent existed between the defendants and Mr. Lassiter is not supported by the record before this Court.

In the absence of authorization for the alterations in the construction of the septic distribution system via the doctrine of principal and agent, the trial court's entering judgment for recovery by the plaintiff on the contract as modified cannot stand.

Although the alterations in the construction of the septic distribution system make it apparent that the contract was not strictly performed, the question still remains whether the plaintiff may recover under the doctrine of substantial performance as stated in *Vermont Structural Steel Corp.* v. *Brickman*, 126 Vt. 520, 523–24, 236 A.2d 658 (1967). Therefore, the cause must be remanded for hearing to determine whether the plaintiff is entitled to recover on this theory. At this hearing, the defendants may also be afforded the opportunity to present their pleading entitled "counterclaim".

*Judgment reversed and cause remanded.*