# Morrisville Lumber Co., Inc. v. Cetin A. and Judy Okcuoglu

[531 A.2d 887]

No. 85-463

Present: Allen, C.J., Hill, Peck and Gibson, JJ., and Barney, C.J. (Ret.), Specially Assigned

Opinion Filed May 1, 1987

Motion to Reargue Denied June 12, 1987

*Stevens & Elliott*, Stowe, for Plaintiff-Appellant.

*Peter B. Brittin* of *Stearns & Thorndike*, Stowe, for Defendants-Appellees.

**Allen, C.J.** This appeal is from a grant of summary judgment in favor of defendants. We affirm.

In September 1981, defendants entered into a written contract with Nourjian Building Company (Nourjian) for the construction of a vacation home in Stowe. Defendants agreed to a contract price of $225,000. Nourjian was to complete performance by February 1982. Plaintiff, Morrisville Lumber Company, provided building materials and supplies on an open account to Nourjian. Nourjian had two accounts with plaintiff: a "general" account and an "Okcuoglu" account. A contract dispute between defendants and Nourjian over certain modifications and the completion date ultimately led to Nourjian's termination in August 1982. Defendants thereafter completed construction on their own. Plaintiff seeks to recover from the defendants the unpaid balance for the materials and supplies which it had provided to Nourjian.

In August 1982, plaintiff filed a contractor's lien against defendants' home for the amount due on its "Okcuoglu" account; it did not include the amounts due on Nourjian's "general" account upon which materials for defendants' house were also charged. The lien was never perfected. In September 1982, plaintiff brought suit against Nourjian for the materials and supplies it had provided under both accounts. The plaintiff obtained a judgment by default against Nourjian for the amounts due for materials furnished on the job, which has not been satisfied.

The plaintiff then brought this action against defendants for the amounts plaintiff had been unable to collect from Nourjian. Plaintiff and defendants each filed motions for summary judgment which were denied. A later request for reconsideration of the motions was also denied. After additional discovery, defendants filed a renewed motion for summary judgment which was also denied. Thereafter, the court, on its own motion, reconsidered its earlier denial and granted summary judgment in favor of defendants.

Plaintiff's first argument is procedural. Plaintiff contends that the trial court erred by reconsidering, on its own motion without a hearing, its earlier denial of defendants' motion for summary judgment. As indicated, the trial court had denied summary judgment on three separate occasions prior to granting the motion in favor of defendants. It is plaintiff's contention that V.R.C.P. 60(b) exclusively governs relief to be granted from the denial of a summary judgment motion, that no criteria required by Rule 60(b) for relief were present, and that Rule 60(b) has no provision allowing a court to reconsider an earlier denial on its own motion.

■ Plaintiff's argument necessarily implies that the denial of a summary judgment motion is a final judgment. The denial of a motion for summary judgment, however, is an interlocutory order, and is not appealable as a matter of right. See *In re Pyramid Co.*, 141 Vt. 294, 299, 449 A.2d 915, 917 (1982); 6 J. Moore's Federal Practice §§ 56.20[2], 56.21[2] (1986). Upon denial, the claim remains pending for trial. V.R.C.P. 60(b) deals exclusively with relief from final judgments and is not controlling in the present case. *Dudley* v. *Snyder*, 140 Vt. 129, 131, 436 A.2d 763, 764 (1981).

■ Plaintiff nevertheless contends that it was inappropriate for the court to have reviewed and granted defendants' motion where it had been earlier denied. Procedurally, this was not error. The court had additional materials before it. See *United States* v. *Horton*, 622 F.2d 144, 148 (5th Cir. 1980) (trial judge properly reconsidered motion for summary judgment where additional material was before court); 6 J. Moore's Federal Practice § 56.14[2] (1986). A hearing was not required. V.R.C.P. 56(c), Reporter's Notes, 1984 amendment.

■ Our standard on review of a motion for summary judgment is the same standard as applied by the trial court: summary judgment is only appropriate when the materials before the court

clearly show that there is no genuine issue as to any material fact. *Cavanaugh* v. *Abbott Laboratories*, 145 Vt. 516, 520, 496 A.2d 154, 157 (1985). Plaintiff submitted three theories to the trial court to establish that genuine issues of material fact existed necessitating trial. Plaintiff argued first that Nourjian was defendants' agent, second, that defendants were unjustly enriched as a result of plaintiff's materials, and third, that plaintiff was a third-party beneficiary of the Nourjian contract with defendants.

The trial court properly determined that no genuine issue of material fact existed concerning Nourjian's alleged status as defendants' agent.

■ Paragraph 10.1 of the Nourjian contract with defendants specified that "the contractor (Nourjian) shall supervise and direct the work, using his best skill and attention. The Contractor shall be solely responsible for all construction . . . and for coordinating all portions of the work under the contract." Paragraph 10.2 provided that "the Contractor shall provide and pay for all labor, materials, [and] equipment . . . ." Plaintiff relies heavily on the fact that Nourjian testified in deposition that he believed he was the defendants' agent. His belief, however, does not preclude the court's determination as a matter of law that no agency relationship existed, where such a determination was clear from the evidence before the court. See, e.g., *Frank W. Whitcomb Construction Corp.* v. *Cedar Construction Co.*, 142 Vt. 541, 544, 459 A.2d 985, 987-88 (1983); *Templeton Construction Corp.* v. *Kelly*, 130 Vt. 420, 425, 296 A.2d 242, 245 (1972). Nourjian was an independent contractor, and the contract explicitly provided that defendants were to exercise no control over Nourjian's activities.

Plaintiff's second argument is that it is entitled to equitable relief because defendants have been unjustly enriched through the use of materials that are now part of defendants' home, and because the contractor's lien statute, 9 V.S.A. § 1921, does not provide an adequate legal remedy.

The plaintiff relies on *Circus Studios, Ltd.* v. *Tufo*, 145 Vt. 219, 485 A.2d 1261 (1984), to support its unjust enrichment claim. In *Circus Studios*, this Court held the defendants liable on an implied contract theory. *Id.* at 222, 485 A.2d at 1263. The defendants had accepted and used plaintiff's work product and dealt directly with the party to whom they were held liable. In the present case, the defendants neither accepted any materials from, nor dealt directly with, the subcontractor. Testimony indicated

that the defendants did not even know with whom their general contractor would be dealing.

The equitable doctrine of unjust enrichment rests upon the principle that a person should not be allowed to enrich himself unjustly at the expense of another. *Legault* v. *Legault*, 142 Vt. 525, 531, 459 A.2d 980, 984 (1983). Examining whether defendants were unjustly enriched entails determining whether the defendants received a benefit for which plaintiff should be compensated. E. Farnsworth, Contracts § 2.20, at 100 (1982). Affidavits and deposition testimony indicate that defendants paid Nourjian in excess of $185,000 at the time defendants terminated Nourjian, and an additional $63,000 to complete the home on their own. The retention of a benefit is not unjust where defendants have paid for it. Defendants were not unjustly enriched since defendants satisfied their obligation by paying in excess of the original contract price.

Plaintiff further argues that a genuine issue of fact exists as to whether the money paid by defendants to Nourjian was specifically earmarked for supplies plaintiff provided Nourjian. Simply stated, it makes no difference. Defendants paid Nourjian for all benefits received from Nourjian. Defendants were not therefore unjustly enriched. The success of a claim for unjust enrichment depends on the particular facts and circumstances of each case. This is not an appropriate case for such relief. To allow plaintiff to recover in these circumstances would be to require defendants to pay twice. No genuine issue of material fact exists as to plaintiff's unjust enrichment theory.

The argument that plaintiff was a third-party beneficiary of the contract entered into between Nourjian and defendants was also properly determined by the trial court as a matter of law. Whether or not a party is a third-party beneficiary is based on the intention of the original contracting parties. *Broadway Maintenance Corp.* v. *Rutgers*, 90 N.J. 253, 259-60, 447 A.2d 906, 909 (1982). In order for the trial court to have found a genuine issue of material fact concerning this aspect of plaintiff's argument, plaintiff would have had to present evidence indicating that Nourjian and the defendants entered into their agreement in contemplation of conferring a benefit on the plaintiff, to satisfy a debt owed by Nourjian to the plaintiff. There was not even a suggestion that such was the intent of the parties. No debt existed between Nourjian and plaintiff at the time the contract between

Nourjian and defendants was entered into, nor did the evidence indicate that Nourjian and the defendants contemplated satisfying a debt of Nourjian's. Such is the essence of a third-party beneficiary contract. *Tamposi Associates, Inc.* v. *Star Market Co.*, 119 N.H. 630, 632-33, 406 A.2d 132, 134 (1979). It was not present.

Plaintiff's reliance on *Pike Industries, Inc.* v. *Middlebury Associates*, 140 Vt. 67, 436 A.2d 725 (1981), is misplaced. In *Pike*, the two original parties to the contract, Middlebury and Bean, expressly agreed that upon termination of the contract, liability to Pike, the third-party-beneficiary subcontractor, would be assumed by the owner. Any obligations, commitments or unsettled claims which the general contractor had undertaken or incurred in good faith could be validly pursued against the owner. If the owner terminated the contract, the owner was liable to the subcontractor. *Id.* at 70, 436 A.2d at 727. Under the present contract, no such provision upon termination existed between the original contracting parties. Unlike *Pike*, no third-party beneficiaries were contemplated. The defendants, upon termination, had no obligation to subcontractors. The defendants' only obligation was to pay any excess to Nourjian if the unpaid balance of the original contract sum exceeded their expense of finishing the work. The evidence introduced through affidavits indicated that defendants paid more to finish their house than called for by the contract. In any case, such excess was to be paid to Nourjian, one of the original contracting parties, and not to any subcontractors. Further, in *Pike*, evidence indicated that Middlebury, one of the original parties to the contract, dealt directly with Pike, the subcontractor. In the present case, unlike *Pike*, defendants did not know with whom the general contractor would be subcontracting. *Id.* at 69, 436 A.2d at 726. In sum, no factual issues existed upon which a court could have determined that Morrisville Lumber was a third-party beneficiary of the Okcuoglu-Nourjian contract.

*Affirmed.*