Blake vs. Blake and others.

---

## BLAKE vs. BLAKE and others.

*November 29 — December 12, 1882.*

DEED: EQUITY. *(1) Rescission of conveyance. (2) Presumption against destroyer, of deed, to whom applicable. (3) Evidence of condition in destroyed deed. (4) Condition subsequent. (5) Accounting after entry for condition broken.*

1. A court of equity will freely rescind a conveyance by parents to a son in consideration of his covenant to support them, in case of a breach of such covenant.

Blake vs. Blake and others.

2. In an action to re-establish a conveyance which had been destroyed by one of the defendants who was named as a grantor in the deed, but who never executed it and who. does not defend, no presumption as to the contents of the deed will be made against the other defendants who had nothing to do with its destruction.

3. It is *held* that, in this case, there is a clear and satisfactory preponderance of evidence that a certain deed, which had been destroyed, contained conditions that the grantee should reside with his parents, the grantors named therein, on the lands and should work and improve the same, and that he should support his parents during their lives.

4. A condition, the breach of which is good ground in equity for canceling the conveyance of which it is a part, will be held to be a condition subsequent unless there is something in the instrument to show a contrary intent.

5. Moneys received by a grantor for timber taken from land after a re-entry thereon by him for condition broken, form no basis for an accounting in equity.

APPEAL from the Circuit Court for *Wood* County.

The plaintiff, *George F. Blake*, is the son of the defendants *Alanson* and *Elizabeth Blake*, and the brother of the defendant *C. M. Blake*. In April, 1866, a parol agreement was made between the plaintiff and his father and mother that the latter should convey to the plaintiff an undivided one half of a farm consisting of four adjoining forty-acre tracts, in the county of Wood, owned by *Alanson*, and on which he and his wife resided. The plaintiff agreed, in consideration thereof, to expend the sum of $870, which he then had, in improving and stocking the farm, and to pay one of his sisters the sum of $200. The plaintiff thereupon expended the $870, pursuant to such agreement, but has not paid any part of the stipulated sum to his sister. He and his father worked, improved, and carried on the farm in common until December, 1868, when the plaintiff left the farm and worked on his own account during the winter. In the spring of 1869 he went to California, and remained there until the spring of 1877, when he returned to his father's house.

In the latter part of 1867, or early in 1868, the plaintiff and his father went to the office of Webb & Witter, attorneys at law in Grand Rapids, and procured Mr. Witter to draw a deed pursuant to such oral agreement. In that instrument *Alanson* and *Elizabeth* were named as grantors and the plaintiff as grantee, and it purported to convey to the latter an undivided half of the four forty-acre tracts above mentioned. It contained a condition that the plaintiff should pay $200 to one of his sisters therein named. *Elizabeth* was not present when the deed was drawn. *Alanson* signed, sealed, and acknowledged the deed, and his execution thereof was duly attested. He then handed the deed to the plaintiff, who took it to their home. *Elizabeth* never signed it. Before leaving for California he gave the deed to his parents for safe-keeping. It was never recorded. Soon after the return of plaintiff from California his mother destroyed the deed, but without the consent, procurement, or knowledge of either of the other defendants.

In June, 1877, the defendant *Alanson* conveyed to his son, the defendant *C. M. Blake*, three of the four forty-acre tracts described in the deed to the plaintiff. *C. M. Blake* had full knowledge of the above transactions between the plaintiff and his parents.

This action was brought to re-establish the conveyance thus destroyed by *Elizabeth*, by requiring the defendants to release to the plaintiff an undivided one half of the premises therein described, and for an account.

The defendants *Alanson* and *C. M. Blake* answered jointly, alleging, both as a defense and a counterclaim, that in addition to the condition in the deed to plaintiff that he should pay his sister $200, such deed contained the following conditions, to wit: (1) That the said plaintiff should reside and remain with said *Alanson* and *Elizabeth Blake* on said lands, and should work, improve, and cultivate the same; and (2) that plaintiff should support and maintain the

said *Alanson* and *Elizabeth Blake*, and furnish them with suitable and proper food and clothing, and care and provide for them in sickness and in health during their natural lives.

The prayer of the counterclaim is that the deed to plaintiff be canceled and held for naught, and the plaintiff be divested of all right, title, and interest in and to the lands described therein.

Whether the deed from *Alanson* to the plaintiff contained the above conditions or not, was the question chiefly litigated on the trial, and to which a large portion of the testimony was directed. This being the only question considered in the opinion, a further statement of the case is unnecessary. The circuit judge found for the plaintiff, and gave judgment in his favor for the relief demanded in the complaint. An account was also stated of transactions between the parties, and a balance of $200 found due from *Alanson* to plaintiff. The defendants appealed from the judgment.

The cause was submitted for the appellant on the brief of *Geo. R. Gardner*, and for the respondent on that of *L. P. Powers*.

LYON, J. It was held by this court in *Bogie v. Bogie*, 41 Wis., 209, and again in *Bresnahan v. Bresnahan*, 46 Wis., 385, that a court of equity will freely rescind a conveyance by parents to a son in consideration of the covenant of the son to support and maintain them, in case the son fails to perform his covenant in that behalf. The rule rests upon principles so equitable and humane that it may well be hoped it will never be disturbed. It must control the decision of this case. If, therefore, the deed from the defendant *Alanson Blake* to his son, the plaintiff, contained the condition that the plaintiff should reside upon the premises with, and support and maintain, his parents during their natural lives, such deed should be rescinded. Such condition has the force and effect of a covenant by the plaintiff to support and

maintain them, and he has entirely failed to do so; at least, since December, 1868.   Hence the controlling question in the case is, Did the deed contain such condition or covenant? The only direct testimony in the negative is that of the plaintiff himself, who testifies that the instrument contained nothing of the kind.   The defendants *Alanson*, *Elizabeth*, and *C. M. Blake*, a sister and a nephew of the plaintiff, each testified that they had read the deed (some of them several times), and each testified positively that it contained the conditions in question.

Mr. Witter, who drew the deed, testifies that there were conditions affecting the consideration of the deed; that he advised the insertion of the same in the instrument itself; that his impression is such conditions had something to do with the support of *Alanson* and wife; and that, whatever the conditions were, he has no doubt he put them in the deed. This witness stands disinterested between the parties.   He is a most intelligent gentleman, and gave his testimony with great candor and caution.   He is not positive as to what conditions he wrote in the deed, for many years elapsed before he was called to testify, and the particulars of the transaction had faded from his memory.   Because his memory of the transaction is somewhat indistinct we do not give to his testimony the controlling weight that was given in *Bogie v. Bogie*, 35 Wis., 659, to the testimony of the justice who drew the instruments there in question.   Yet the testimony of Mr. Witter is very significant, and tends quite strongly to corroborate that of the defendants and their witnesses.

Moreover, it is apparent from all the evidence that the defendants *Alanson* and *Elizabeth* were very solicitous for the welfare of their children, and anxious to keep their family together; hence it is a reasonable probability that they were influenced by such considerations in making the agreement with the plaintiff.   We should reasonably expect to find in the deed based upon that agreement made by *Alanson* to

the plaintiff, just such conditions as the defendants and their witnesses testify positively it contained, and which Mr. Witter evidently believes it contained. The learned circuit judge seems to have made some application in the case of the maxim, *omnia præsumuntur contra spoliatorem*, but we do not think it applicable. The defendant *Elizabeth*, who destroyed the deed, had never executed it, and was not bound by any parol agreement to execute it. She makes no defense to the action, and neither her husband nor *C. M. Blake*, who do defend, had anything to do with its destruction. No presumption ought to be made against them because of the destruction of the instrument, notwithstanding a recovery by them in the action may indirectly inure to the benefit of *Elizabeth*.

Some admissions and collateral facts were proved by the parties in support of their respective theories of the contents of the deed. These are not very important, and it is sufficient to say that we think the testimony of this character, *pro* and *con*, is about balanced. From the best investigation of the testimony we have been able to make, we conclude that there is a clear and satisfactory preponderance of evidence in support of the proposition that the deed contained the conditions alleged in the answer.

There is another aspect of the case which requires to be noticed, because it affects the accounting. We think it sufficiently appears that the conditions which we find the deed contained — especially that for the maintenance of plaintiff's parents — are conditions subsequent within the rules laid down in *Horner v. C., M. & St. P. Railway Co.*, 38 Wis., 165, and that *Alanson Blake* substantially re-entered upon the premises for conditions broken, when the plaintiff left him, and he assumed exclusive control of the whole premises in 1868.

Notwithstanding the strict rule which prevails in construing conditions subsequent, it is not difficult to hold that a

condition, the breach of which is good ground in equity for canceling the conveyance of which it is a part, is a condition subsequent, unless there is something in the instrument to show that such a condition was not intended. We find nothing of that kind in the contents of the deed under consideration, so far as the proofs disclose such contents.

The basis of the accounting in favor of the plaintiff was a large sum of money received by the defendants *Alanson* and *C. M. Blake* for timber taken by them from the land in controversy. This timber was taken from the land long after condition broken by the plaintiff and re-entry by *Alanson*, and hence long after the plaintiff ceased to have any interest in the land. He is not, therefore, entitled to any of the proceeds of such timber, and should have no credit therefor. Neither should he be charged with the $200 which he failed to pay his sister. In short, we see no occasion here for any accounting in equity. If the plaintiff is the owner of the property which he purchased and left on the farm, or if he has a cause of action for any money paid by him to or for his father, his remedy is ample and complete at law.

The judgment of the circuit court must be reversed and the cause will be remanded with directions to that court to dismiss the complaint, and to give judgment for the defendants on their counterclaim for the relief therein demanded.

