# L. C. DICKERMAN

## v.

## QUINCY MUT. FIRE INS. CO.

MAY TERM, 1895.

*Agency cannot be shown by declarations of agent.   Question of agency for the court.   Evidence.
General exception to charge.*

1.  When the declarations of an agent are offered upon the main issue, the question whether he was in fact agent is a preliminary one for the court.

2.  If in determining this question the court receives other than legal evidence, it is error.

3.  The declarations of an agent that he is such, made without the knowledge of the principal, is not evidence tending to show an agency.

4.  That one has the blank proofs of loss of an insurance company is not evidence tending to show him the agent of the company.

5.  To sustain a general exception to an entire portion of a charge, that portion as a whole must be erroneous.

Assumpsit upon a policy of fire insurance.   Plea; the general issue.   Trial by jury at the December term, 1894, Windsor county, Ross, C. J., presiding.   Verdict and judgment for the plaintiff.   The defendant excepts.

*L. M. Read* and *J. J. Wilson* for the defendant.

*D. C. Dennison & Son* and *William E. Johnson* for the plaintiff.

The exceptions to the charge cannot be sustained. They were to the entire charge, upon one branch of the case, and did not specify any defect. Such an exception is not fair to the court. *Goodwin* v. *Perkins*, 39 Vt. 605, 606; *Rowell* v. *Fuller*, 59 Vt. 696.

TAFT, J. That Morse was the defendant's agent could not be proven by his declarations and acts, unknown to the defendant. Whether he was such agent or not, in this case, was a preliminary question addressed to the court. *Cairnes* v. *Mooney*, 62 Vt. 172. The testimony to show the agency of Morse was admitted under exception; it is referred to and is from the witnesses, Tarbell, Whitham and the plaintiff. The property of the plaintiff was insured in three companies, and Tarbell testified that Morse left some blank proofs of loss of one company and was to send those for the other companies afterwards; whether he ever did or not the witness had no memory. The utmost that can be claimed from the testimony of Tarbell is that Morse agreed to send some blanks, for proof of loss in the defendant company. Whitham testified that Morse left blank proofs of loss of the defendant, with instructions to hold them, when executed, until further advised, "or something to that effect." That after such instructions neither he nor Tarbell, who was his partner, had any correspondence with the defendant, and that he did not "remember that there was anything further done about *that proof of loss*; the inquest came on, and the proceedings were delayed until that terminated." It does not appear that the blanks so furnished were ever filled out and executed. The contrary may be inferred from the testimony. The defendant testified that Morse said "he was agent for the Fitchburg and Quincy," and further testified, "I think he is treasurer for the Quincy

—I won't be certain." The conversation of Morse with the plaintiff was particularly objected to, and exception taken. These declarations of Morse that he was the agent of defendant was illegitimate testimony from which to find the fact of agency. We are unable to see that there was any testimony from the witnesses as above stated, and it was all there was in the case, that had a legitimate tendency to establish the agency of Morse. Illegal testimony, *i. e.*, the declarations of Morse, was certainly admitted. This, if there was no other reason, requires a reversal of the judgment. It was the duty of the court to exclude all testimony tending to show the admissions, declarations and acts of Morse until it had determined as a preliminary question that Morse was the defendant's agent. It is apparent from the record that the court did not so adjudge, at any time. The court and the plaintiff's counsel treated the question of agency as one for the jury, for the court said, referring to the testimony tending to show it, " We can't say what the jury would (may) find about it" (the agency) ; and plaintiff's counsel said, " If the jury do find so (that Morse was defendant's agent), then what was said between that agent and the plaintiff is admissible." In all the testimony referred to there is none that has any tendency to show the agency of Morse. The fact that he had blank proofs of loss of the company had not by itself any such tendency. An interloper whom the company never saw nor heard of, might obtain them. Nothing on the face of them imports that the bearer of them had any authority from the company to act in its behalf. As well might a bank be prejudiced by the possession of its blank cheques. The nearest approach to testimony in all that is detailed in the evidence is the statement of Mr. Whitham that Morse instructed him to hold the papers, the proofs, until further advised. Had it appeared that these papers or proofs were subsequently received by the company knowing of Morse's acts, and did not disavow them, it would be evidence tending to

show that he was its agent, and acting for them ; but nothing further was done in relation to the papers which Morse directed Whitham to retain until further advised.    The proofs of loss which were in evidence, plaintiff's Ex. "A," are not written upon the blanks of any company, and there is no evidence tending to show that Morse ever heard or knew of them. The testimony of the plaintiff, "I think he (Morse) is treasurer of the Quincy—I won't be certain," is too vague, uncertain, and indefinite upon which to find that Morse was one of the defendant's officers.    It does not tend to show it.

There being no testimony in the record tending to show Morse's agency, his admissions and declarations were not admissible upon the main question, and notice to him of the concurrent insurance was not notice to the defendant of that fact.    This was a material fact ; indeed, it was the pivotal point in the case, for in no other way did the plaintiff attempt to avoid the defect in the proofs, of not truly stating the concurrent insurance.    Had the defendant notice of the defect, it was its duty to have returned the proofs for correction.    The admission of this testimony was vigorously contested ; eight times was the objection made with as many, save one, exceptions, the counsel contending, "It is not shown that Morse is an agent of this company."

The defendant excepted to that portion of the charge relating to the care and exertion the plaintiff ought to have exercised and employed in the saving of his goods ; the exception was general and to the whole charge on that subject.    No specific error was pointed out.    To entitle the defendant to a reversal under so general an exception, it must appear that the whole portion of the charge so excepted to was erroneous. The charge in the main was correct.    The jury were told that it was the plaintiff's duty to make reasonable exertion to save his goods after he ought to have believed they would be burned or exposed to be burned ; to act like a reasonable, prudent, and careful man ; to save as much as he could ; to make

the loss as small as he could by the exercise of reasonable diligence, prudence, and care. That the plaintiff was under a duty to act as a prudent man would under the same circumstances. Some of the illustrations made use of by the court were not happily worded, but the legal principles were correctly stated. As the case must be remanded for a new trial, it is not important that the charge be critically scanned, it being in the main correct, and for that reason the plaintiff not entitled to have this exception sustained.

*Judgment reversed and cause remanded.*