ELLIS J. GOMEZ & CO. *v.* W. W. HARTWELL.

May Term, 1922.

Present: WATSON, C. J., POWERS, TAYLOR, MILES, and SLACK, JJ.

Opinion filed October 3, 1923.

*Bills and Notes—Negotiable Instruments Act—Burden of Proof Concerning Conditional Delivery—Wilful Destruction of Documentary Evidence—Presumptions and Inferences— Principal and Agent—Acts and Declarations of Agent— When Agency Jury Question and When for The Court— Necessity of Exception to Secure Review—When Decision of Trial Court on Preliminary Question of Agency Reviewable—Immaterial Evidence—Admission of Certificates of Stock—When Acts of A Party Are Admissible.*

1. Under the Negotiable Instruments Act, § 16 (G. L. 2886), in an action on a check, signed by defendant and claimed by him to have been delivered conditionally, he has the burden of showing conditional delivery and failure of such condition, the defense being affirmative in character.

2. The presumption, to which the wilful destruction of documentary evidence gives rise, that the document if produced would be injurious to the one who destroys it, does not take the place of evidence, but is regarded as merely matter of inference in weighing the evidence applicable to the question in dispute.

3. Such presumption has no application, where the spoliation was by alleged partner, wholly outside of the partnership business, and without the defendant being in any way connected therewith, as none but those conniving at the act of spoliation are affected by any inference arising therefrom.

4. The acts and declarations of an alleged agent are not admissible to bind another until the fact of agency and its scope are evidenced in some lawful way, although it is not necessary that express delegation of authority be shown.

5. While agency, when relied upon as a basis of recovery, is a question for the jury, when declarations of an alleged agent are offered as evidence upon the main issue, the question whether he was in fact acting as agent is for the court as a preliminary question affecting the admissibility of other evidence.

6. Where there was no exception to the holding that agency had not been sufficiently shown, the Supreme Court is not required to examine the evidence on that question to determine whether declarations of an alleged agent were admissible.

7. While the decision of the trial court on a preliminary question of agency is ordinarily not reviewable, a holding against or unsupported by the evidence, if excepted to, would constitute reversible error.

8. To sustain an objection on the ground of immateriality alone, it should be made to appear that the evidence is clearly irrelevant.

9. In an action on a check claimed by plaintiff, a firm of brokers, to have been delivered by defendant, with a note and other checks, for corporate stock, where the defense was a conditional delivery and non-compliance with the condition, after a witness for plaintiff had testified, without objection, that the plaintiff had placed an order for the stock the next day after the note and checks had been delivered, and had received the stock certificates therefor, such certificates were properly admitted, as they tended to make more intelligible the testimony received without objection, and to show that order for the stock had been placed and certificates issued before any question arose respecting the character of the contract, and thus to throw light on the question directly involved.

10. Acts of a party to an action, if logically relevant to some proposition in issue as a probative fact, are admissible.

11. In an action on a check, claimed by plaintiff to have been given for corporate stock and by defendant to have been delivered conditioned upon the execution of another contract, after a witness for plaintiff had testified, without objection, to having procured the issuance of a stock certificate in the name of

defendant and his associates, which was rejected on tender to their attorney, such certificate was admissible on plaintiff's theory of the case to show that it was ready on its part to perform.

ACTION OF CONTRACT. Plea, the general issue and special plea. Trial by jury at the September Term, 1921, Washington County, *Moulton*, J., presiding. Verdict and judgment for the plaintiff. The defendant excepted. *Reversed and remanded.*

*Plumley, Plumley & Campbell*, and *John W. Gordon*, for the defendant.

*Theriault & Hunt* for the plaintiff.

TAYLOR, J. The action is brought on a check for five hundred dollars drawn by the defendant and payable to the order of the plaintiffs. Trial was by jury with verdict and judgment for the plaintiffs. The execution of the check was conceded, and, having been admitted in evidence, the plaintiffs rested. The defense relied upon was a conditional delivery of the check and consequent failure of consideration. The case is here on exceptions saved by the defendant.

There was evidence tending to show the following facts: The defendant, who resides in Northfield, Vermont, F. S. Dyke, also of Northfield, and Dr. F. H. Davis of Lyndon, Vermont, became interested in acquiring the exclusive right to sell an automobile accessory called "signal light" in certain territory. The appliance was manufactured by the Standard Auto Parts Company of America, a corporation, and the Standard Sales Corporation had the exclusive right of selling the lights. The corporations occupied the same offices in New York City with the plaintiff, and one Fred J. Miles was the president of both corporations. The plaintiffs are brokers engaged in selling securities, including stocks and bonds, with offices in New York City, Boston and elsewhere, and had the exclusive right to sell the stock of the Standard Auto Parts Company. Early in July, 1920, Dyke and a son of Dr. Davis had a talk with plaintiff Gomez at his Boston office respecting the "signal light" proposition. The latter told Dyke that if he was interested in getting territorial rights he should see Miles, as he was the head of

the concern that was distributing the device. Accordingly, they accompanied Gomez to New York where they met Miles and also a Mr. Hurtel and a Mr. Halpern who were introduced by Gomez as his stock salesmen. Later (July 13, 1920) Mr. Davis, Dyke, and the defendant met Gomez and Miles at their New York office. Hurtel and Halpern were present. The defendant and his associates were told that in order to obtain the territorial rights it would be necessary to purchase some of the stock of the Auto Parts Company; and Miles said in Gomez presence that they might have the rights in Vermont and Maine on condition that they purchase $5,000 worth of such stock—that the contract for territorial rights was dependent upon the contract for stock. Gomez referred them to Halpern and Hurtel as the men who were to "take care" of them and explain the proposition. The negotiations that followed were in part conducted by Halpern or Hurtel and in part by Miles in Gomez presence. Defendant's evidence tended to show that he and his associates represented that they were unable to carry out the proposition alone, whereupon a sale contract was submitted and an agreement for the purchase of $5,000 worth of the stock and a note for $2,500 were prepared; that it was agreed that checks dated ahead aggregating $2,500 should be given and Dyke and the defendant should return to Northfield, submit the contracts to their attorneys for approval and undertake to secure the signatures of two other responsible persons; and that completion of the contracts depended upon the approval of the attorneys and the procurement of the additional signatures. The agreement for the purchase of stock was signed by the defendant and his associates and had blanks for two additional signatures. There was a conflict in the testimony whether they had signed the note. Certain of the papers not including the checks were given to Dyke who took them to Northfield. The proposition was disapproved by the attorneys and the New York parties were so notified. Miles came to Northfield with a view to bringing about an agreement, but failed to do so; and the defendant and his associates were unable to secure the desired assistance. As a result the sales contract was never consummated but the plaintiffs insisted and still insist that the agreement for the purchase of stock was an independent contract and binding upon the defendant and his associates, regardless of the failure of the negotiations for the sale rights. The plaintiffs' evidence tended to show that there

was no such an agreement as the defendant claims, that the sale of the stock was without any condition, and that the check was given in part payment therefor.

[1]   The principal question of fact submitted to the jury was whether there was an agreement between the parties to the suit that the check was not to be enforced unless certain contingencies should happen. The jury were in effect instructed that the burden was on the defendant to prove the conditional agreement claimed by him as a defense to the action on the check, to which the defendant excepted. Section 16 of the Negotiable Instruments Act (G. L. 2886) provides: "Where the instrument is no longer in the possession of a party whose signature appears thereon, a valid and intentional delivery by him is presumed until the contrary is proved." The defendant contends that the production of the check made only a *prima facie* case for the plaintiffs, shifting the burden of evidence to the defendant; but that the burden of proof remained with the plaintiffs to overcome the evidence produced tending to show that the check was void for want or failure of consideration. But the statute goes further than the defendant admits. It casts upon the defendant the burden of showing the conditional delivery relied upon and failure of such condition. The defense is affirmation and the ultimate burden of sustaining it rests upon the defendant. Among the cases so holding are *Mason* v. *Cater,* 192 Iowa 143, 182 N. W. 179; *Harder* v. *Reinhardt,* 162 Wis. 558, 156 N. W. 959; *Winfrey* v. *Ragan,* 136 Mo. App. 250, 117 S. W. 83; *Ellerd* v. *Ferguson* (Tex. Civ. App.) 218 S. W. 605; *Madden* v. *Gaston,* 137 App. Div. 294, 121 N. Y. S. 951; *Lachenmaire* v. *Hanson,* 196 Fed. 773, 116 C. C. A. 397; *Woltzen* v. *Wieman,* 168 Ill. 220. Our cases relied upon, distinguishing between the burden of proof and the burden of evidence, are not in point. The question is like that presented when want or failure of consideration is interposed as a defense, as to which it is held the Act places the burden upon the defendant. *Harponola Co.* v. *Wilson,* 96 Vt. 427, 120 Atl. 895.

[2, 3]   As seen, there was a conflict in the testimony whether the note for $2,500, given or to be given in part payment for the stock, was signed by the defendant and his associates. The jury were told that whether or not the note was signed or indorsed was important as bearing upon the main question in the case,

*viz.,* whether the contract was as the plaintiff claimed, a complete and binding contract for the sale of the stock, or as the defendant claimed, incomplete and conditional; that if the note was completed—signed and indorsed—it would be evidence tending to show that the contract for the sale of stock was unconditional, while if the note was incomplete—made out but not signed or indorsed—it would be evidence which they could consider as tending to show that the defendant's contention that the contract was not an absolute one was true. It appeared in evidence that the note was among the papers brought to Northfield by Dyke and that shortly before the interview with Miles at Northfield it had been destroyed by Dyke in the presence and with the approval of Dr. Davis. The defendant was not present and there was no evidence in any way connecting him with the destruction of the note. The jury were instructed that the wilful destruction of documentary evidence gives rise to the presumption that the document, if produced, would be injurious to the one who destroys it, and were told to consider the presumption in connection with the evidence on the part of the plaintiffs, if they found that the note was intentionally destroyed. The defendant excepted to the charge as given in the absence of evidence that the defendant knew of the destruction of the note or in any way assented to or aided in its destruction. An exception to the failure of the court to charge is aimed at the same objection.

Plaintiffs' counsel criticize the form of the exception but an examination of the transcript indicates plainly that the court ruled understandingly. An intimation that the court might charge that there would be no presumption against the defendant unless he had knowledge of the spoiliation was met by the claim that if one partner commits the spoiliation the presumption arises as to the others engaged in the common business. In spite of the defendant's objection the court adopted this view and permitted the charge to stand. The exception to the charge presents reversible error. That the note was intentionally destroyed was not in dispute. The defendant's responsibility for the spoiliation was assumed, while the evidence was to the contrary. The presumption in any event does not take the place of evidence, but is regarded as merely matter of inference in weighing the evidence applicable to the question in dispute. *Patch*

*Mfg. Co.* v. *Protection Lodge,* 77 Vt. 294, 329, 60 Atl. 74, 107 A. S. R. 765. The "question in dispute" was whether the note was signed or not. Other possible objections aside, it is enough to say that it was error to permit the jury to draw an inference against the defendant on the undisputed evidence. It is clear that none but those conniving at the act of spoliation are affected by any inference arising therefrom. 2 Cham. Mod. Law of Ev. 1078a; *Clark* v. *Ellsworth,* 104 Iowa 442, 73 N. W. 1023; *Blake* v. *Blake,* 56 Wis. 392, 14 N. W. 173; *Bank of Irwin* v. *Am. Ex. Co,.* 127 Iowa 1, 102 N. W. 107; *Orient Ins. Co.* v. *Moffatt,* 15 Tex. Civ. App. 385, 39 S. W. 1013. See *Minihan* v. *Boston El. Ry. Co.,* 205 Mass. 402, 91 N. E. 414, where it is held that an attempt to intimidate a witness is not admissible in the absence of a showing that the opposite party is connected therewith. There is no merit in the claim that the act of spoliation should be imputed to the defendant. It was wholly outside the scope of the partnership business, if it could be said that the evidence disclosed any such relation.

Exceptions are relied upon to the exclusion of certain declarations of Hurtel, Halpern, and Miles offered upon the theory that they were the plaintiffs' agents. For convenience these exceptions are considered together. The offered evidence was excluded upon the ground that the agency of the declarants had not been sufficiently established. The defendant calls attention to evidence, direct and circumstantial, from which the court undoubtedly could have found the fact of agency, and argues with apparent confidence that it was error to exclude the declarations. The plaintiffs' answer is that the preliminary question of agency was for the court, implying that it is not reviewable.

[4, 5]   It is the undoubted rule that the acts and declarations of an alleged agent are not admissible to bind another until the fact of agency and its scope are evidenced in some lawful way. *Chadwick* v. *Wiggin,* 95 Vt. 515, 116 Atl. 74; *Livingston Mfg. Co.* v. *Rizzi Bros.,* 86 Vt. 419, 85 Atl. 912; *Dickerman* v. *Fire Ins. Co.,* 67 Vt. 609, 32 Atl. 489. It is not necessary, however, that express delegation of authority be shown. *Sias* v. *Consolidated Lighting Co.,* 73 Vt. 35, 50 Atl. 554. When agency is relied upon as a basis of recovery, the question is for the jury. *Chadwick* v. *Wiggin, supra.* But when the declarations of an alleged agent are offered as evidence upon the main issue, the

question whether he was in fact acting as agent is for the court. *Dickerman* v. *Fire Ins. Co., supra.* There is then a preliminary question affecting the admissibility of other evidence, in which case it is manifestly impracticable to submit the question to the jury, as is sufficiently shown in *Cairns* v. *Mooney,* 62 Vt. 172, 19 Atl. 225, where the fact of agency affecting the competency of a witness was involved.

[6, 7] As there was no exception to the holding that agency had not been sufficiently shown, we are not required to examine the evidence on that question, but must dispose of the exceptions as they stand with an unchallenged finding unfavorable to the defendant. It necessarily follows that they do not present reversible error. Since there is to be a retrial, we take occasion to say that while the decision of the trial court on a preliminary question of agency is ordinarily not reviewable, a situation may arise in which it would be legal error to deny the finding. A holding against or unsupported by the evidence, if excepted to, would constitute reversible error. *Piper* v. *Oakland Motor Co.,* 94 Vt. 211, 109 Atl. 911.

The plaintiff Gomez testified without objection that he delivered the note and checks to Miles the next day after the meeting in New York (July 14, 1920) and placed an order for the stock; that certificates shown him marked ''Plft's. 4'' and ''5'' were received by him from the Standard Auto Parts Co., July 17 or 18, 1920; that these certificates remained in his possession some time, when they were returned to the Standard Auto Parts Co., to be transferred and were cancelled by the company. These certificates were each for fifty shares of the stock of the Standard Auto Parts Co., of the par value of five dollars per share, issued to the defendant under date of July 16, 1920. In connection with this testimony, the certificates were offered in evidence as tending to show that the stock contract was not a tentative but a subsisting contract and so acted upon by Miles when he issued the certificates. The defendant saved an exception to their admission. The defendant's check for $500 was dated July 15, 1920, and so on its face was current when the stock certificates were issued. It did not appear to whom or in what amounts the stock was to be issued.

[8-10] The objection that the certificates did not have the tendency claimed is the only one of any importance. It is not

clear how the admission of the certificates as exhibits was prejudicial. The only force they could have was to make more intelligible the testimony received without objection. Moreover, to sustain an objection on the ground of immateriality alone it should be made to appear that the evidence is clearly irrelevant. *In re Wells' Will*, 95 Vt. 16, 23, 113 Atl. 822; *Slayton* v. *Drown*, 93 Vt. 290, 294, 107 Atl. 307. The evidence tended to show that the order for the stock was placed and the certificates were issued in the usual course before any question arose respecting the character of the contract. In the circumstances irrelevancy is not made to appear. On the contrary, the subsequent conduct of Miles and the plaintiffs acting in the regular course of business under the contract would tend to throw light on the question directly involved. Acts of a party, if logically relevant to some proposition in issue as a probative fact, are deemed admissible. 2 Chamb. Mod. Law of Ev. § 1436. Mr. Justice Stephens states the rule to be that when there is a question whether any act was done by any person, any subsequent conduct of such person apparently influenced by the doing of the act and any act done in consequence of it by that person is deemed to be relevant. Stephens' Dig. Law of Ev. (Chase's Ed.) 13. This is but an application of the well-recognized rule that any fact or circumstance that tends to render a claimed fact more or less probable is relevant and so admissible. *Gilfillan* v. *Gilfillan's Estate*, 90 Vt. 94, 101, 96 Atl. 704; *Lamonda* v. *Parizo*, 90 Vt. 381, 98 Atl. 980; *Goodwin* v. *Barre Sav. Bk. & Tr. Co.*, 91 Vt. 228, 100 Atl. 34; 22 C. J. 167, § 93. It is argued, though the point was not made below, that the certificates were issued without the knowledge or procurement of the defendant and should have been excluded as manufactured self-serving evidence. The argument goes to the weight rather than the admissibility of the evidence. The testimony in connection with which the certificates were received had the tendency claimed for it. What, if any, weight should be given to it in the circumstances shown was for the jury. See *Lamonda* v. *Parizo, supra*.

[11] A short time before the suit was brought (under date of May 16, 1921) the plaintiffs procured a stock certificate for 1,000 shares to be issued in the names of the defendant and his associates, which was rejected on tender to their attorney. This having been shown without objection, the certificate was

offered in evidence.  It was objected that the certificate did not in itself tend to prove that any contract existed and that, at most, it was a self-serving declaration.  The court ruled that it was material to the plaintiffs' theory of the case to show that they were ready on their part to perform and admitted the certificate, to which the defendant excepted.  The exhibit having been admitted for the limited purpose indicated, the exception is without merit.

*Reversed and remanded.*

MILES, J., having retired took no part in the disposition of the case.